*48
 
 By the Court.
 

 These two appeals from the Board •of Tax Appeals involve the valuation of the Citizens Building located at 850 Euclid avenue, Cleveland, Ohio, for the year 1937 for the purpose of taxation. They were argued and submitted together in this court. The .appellant in No. 29166, The Citizens Building Company of Cleveland, filed its complaint regarding valuation as lessee under a 99-year leasehold running from 1923, and the appellant in No. 29167, The National City Bank of Cleveland, trustee, filed its complaint for and on behalf of the land trust certificate holders.
 

 The property was assessed on the tax list and duplicate for the year 1937 as follows:
 

 Land $1,185,100
 

 Building 632,100
 

 Total $1,817,200.
 

 The Board of Revision of Cuyahoga, county upon hearing found the true value to he the same as assessed. On appeal to the Board of Tax Appeals that body found the true value as follows:
 

 Land $1,113,100
 

 Building 562,100
 

 Total $1,675,200.
 

 In other words, there was a reduction of $142,000 below that fixed upon the tax duplicate which was approved by the board of revision.
 

 The appellants herein maintain that the decision •of the Board of Tax Appeals is unreasonable and unlawful in that the evidence adduced by the appellee cannot legally and lawfully support the decision and demonstrates its unreasonableness and unlawfulness, and that no reasonable and lawful determination of a value in excess of $1,252,675 could he made, especially in view of positive facts adduced in evidence.
 

 
 *49
 
 The Citizens Building was completed in 1903. It has a frontage of 104 feet on the south side of Euclid and a depth of 197 feet plus. The building is 13 stories high and is located near the corner of Euclid avenue and Ninth street, adjacent to the Schofield Building which is on the corner. For a number of years the first floor was used as a location for a bank. About the year 1924 the banking company that occupied it entered into a merger that resulted in the formation of The Union Trust Company. The latter company then located in the building diagonally across the intersection of Euclid and Ninth, and in that year the Citizens Building was remodeled and fitted for stores on the first floor, the rest being used for offices as it was in the main before remodeling. Beginning with the year 1910 and ending with the year 1923 the lowest valuation for taxation was $1,665,310 and the highest $2,260,270. From 1924 to 1932 inclusive, the highest valuation was in the years 1924 and 1925, namely, $2,867,410 for each year. In the year 1925, $300,000 was added to the valuation on account of the remodeling but the board of review gave an abatement of $300,000; so the valuation as finally determined remained the same as it was in the previous year. From that time on the valuation was gradually decreased until 1932 when it reached $2,044,890. For each of the years 1933, 1934, 1935 and 1936, the value for taxation was fixed at the same amount, to wit, land $945,440, building $632,100, total $1,577,540. So it will appear from the figures hereinbefore given, that the Board of Tax Appeals herein increased the valuation of the land from $945,440 to $1,113,100 and decreased that of the building from $632,100 to $562,100.
 

 Before the Board of Tax Appeals three expert witnesses on value were called on either side. Those called on behalf of the appellants, William E. Malm,
 
 *50
 
 William J. VanAken. and Carl A. Palmer, fixed the value of the whole property, land and buildings, at $1,292,000 (land and building not separated), $1,254,-■600 (land $820,000 — building $434,600), and $1,234,993 (land $793,468 — building $441,525), respectively. Three expert witnesses for the appellees, Virgil I). Allen, Edwin H. McIntosh and M. H. Leeb, fixed values as follows: $921,180 (reproduction cost of building less depreciation — land value not covered), $1,939,335 (land $1,255,800 — building $683,535), and $2,037,497 .(land $1,360,000 — building $677,497).
 

 It will not be necessaxy to review in detail the methods by which the opinions of the various witnesses as to value were reached, but testimony of Mr. Malm is significant. Yet there is no intexxtioxx of emphasizing oxxe method as against another. He reached his ■conclusion by fixxdixxg a net income of $103,361.30 after deducting from gross estimated receipts all items he considered proper, including operating expexxses, depreciation and allowances for improvemexxts. This fixxding of net income he capitalized at 5% interest .and 3% taxes, or a total of 8%, and reached a valuation of $1,292,000 as of April 1,1937. In applying this method he adopted a 5-year prospective basis.
 

 Before further considering Mr. Malm’s testimony it is well to make a comparison. The record discloses that in 1936 the net income of the property was actually $58,647.46, allowing for depreciation $24,000 and $47,333.98 for taxes paid. Assuming the net income' to be the same for the year 1937, the yield for that year would be 3.7% plus upon the value fixed by the Board of Tax-Appeals herein.
 

 In testing Mr. Malm’s figures for reliability, the Board of Tax Appeals might well conclude that an allowance of 5% as a basis for capitalization was in •excess of what was reasonable and proper. Moreover,
 
 *51
 
 Mr. Malm testified that the remaining useful life of the building was only 20 years. On the contrary, one ■of the witnesses for tbe appellee put the expectant life •of tbe building as high as 33 years. It is evident that tbe period of future usefulness would be an important .factor in determining depreciation. In addition, Mr.' Malm put tbe net income only slightly more than the •amount for 1936; as above stated, although there is ■evidence that by tax day 1937 the trend in the neighborhood started up as shown by the figures. There.fore the valuation reached by Mr. Malm depended-upon the proper percentage basis of capitalization, the life of the building and the dependability of' his .figures as to the income of the building.
 

 So it is with the testimony of the various witnesses -as to value. Their opinions necessarily depended upon the methods used, and the assumptions with which they started their inquiry determined in great measure "the conclusions they reached.
 

 The Board of Tax Appeals was not required to •adopt the valuation fixed by any expert but could consider all the evidence. Many facts were adduced in evidence which had a bearing upon the value of the property, such as depreciation, obsolescence, reproduction cost, condition, present and future usefulness and rental income of the building involved and of ■other like buildings in the vicinity, the location of the property and trends with respect to economic values and pedestrian traffic. The Board of Tax Appeals in fixing the true value at $1,675,200, did not accept the •opinion of any one expert but, presumably giving due weight to all such opinions and the other evidence, ■placed a valuation on the building less than any it had been given for purposes of taxation in any previous year of its history and at the same time increased the value of the land. The justification for the latter in
 
 *52
 
 crease lay largely in the evidence that in 1937 the trend in land values was upward.
 

 This court has no power to substitute its judgment for that of the Board of Tax Appeals but determines only whether the valuation fixed by that board is reasonable and lawful. We conclude that the result arrived at by the board is amply sustained by the evidence adduced in the record and is neither unreasonable nor unlawful.
 

 The decision is therefore affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Williams and Turner, JJ., concur.
 

 Bell, J., not participating.