Per Curiam.

The Moreland Courts Apartments were built by the Yan Sweringen brothers during the period of 1925 to 1929 and originally owned and operated by the Shaker Company, a subsidiary of the Yan Sweringen Company. The appellant strongly protests that it did not buy the apartments *370 but rather the stock of the bankrupt Shaker Company. The method of acquisition is not of importance, however.
In 1936, the Shaker Company went into bankruptcy, and in May 1949 the appellant, The Shaker Square Company, was incorporated and it acquired all the stock of the Shaker Company from the trustee in bankruptcy at public auction. The price paid for such stock (after adjustments for mortgage indebtedness and personal property) allocated to the Moreland Courts Apartments property resulted in a book value of $2,146,114, of which $465,708 was allocated to land and $1,680,406 to buildings.
Prior to an order by the auditor of Cuyahoga County, dated December 1,1952, increasing the assessed value of all real estate in Cuyahoga County by 25 per cent (see Cleveland Trust Co., Trustee, v. Board of Revision of Cuyahoga County, 163 Ohio St., 579, 127 N. E. [2d], 748), the assessed values of appellant’s land and buildings were land $180,100 and buildings $1,567,780, a total of $1,747,880. Under that order of the county auditor the assessed values of appellant’s land and buildings were increased for the years 1953 and 1954 to land $225,240 and buildings $1,959,720, a total of $2,184,860. No complaint was made by the appellant covering these two years. In 1955, the auditor of Cuyahoga County determined that the true value in money of this real estate was land $251,530 and buildings $2,884,930. In the proceedings which have culminated in this action here, the assessed land value has not been disputed. The auditor’s assessed building value of $2,884,930 was reduced by the Board of Revision of Cuyahoga County to $2,110,280. Appellant contends that the assessed value of these buildings should be $1,073,050.
Appellant, in its assignment of errors, makes seven specific contentions which are somewhat repetitive and overlapping but which may be summed up as follows:
The decision of the Board of Tax Appeals is unreasonable and unlawful in the following respects:
(1) The board disregarded and rejected the testimony of all the appellant’s witnesses;
(2) After excluding the testimony and evidence offered by appellant to prove that the valuation by the Board of Revision *371 was “grossly erroneous and intrinsically without weight or probative value” upon the ground that said valuation carried no presumption of correctness and could be given no weight in the proceeding, the Board of Tax Appeals thereafter adopted said valuation as establishing the true value of appellant’s buildings for each tax year;
(3) The adoption by the Board of Tax Appeals of such valuation figures of the Board of Revision without affording appellant any opportunity to submit testimony relative to them was an unconstitutional denial of due process of law.
Previous decisions of this court in proceedings of this type are too well known to require citation in this case. Certainly the Board of Tax Appeals has wide discretion in determining the credibility and weight of the testimony of witnesses - which appear before it. After carefully examining the record, this court finds nothing unreasonable or unlawful in the consideration given by the Board of Tax Appeals to the testimony of the witnesses who appeared for appellant, as set forth in the decision of the board. The cogent paragraph in that entry is as follows:
“On the basis of the record in this case and keeping in mind that the appellant has the burden of proving that the true value in money of the subject property is the value stated in the notices of appeal, the Board of Tax Appeals is of the view that it would be indulging in pure speculation if it valued appellant’s real property at a level other than that ascribed to it by the Cuyahoga County Board of Revision.”
Preceding this paragraph, the board found that appellant’s professional appraiser fixed a fair market or real value of the apartment buildings in the amount of $1,100,000, and that the professional appraiser employed by the Cuyahoga County auditor fixed the value in the amount of $1,873,000. (See Citizens Building Co. of Cleveland v. Board of Revision of Cuyahoga County, 141 Ohio St., 47, 46 N. E. [2d], 413.) The record discloses no other testimony as to the value of the buildings.
Section 5717.01, Revised Code, provides:
“An appeal from a decision of a county Board of Revision may be taken to the Board of Tax Appeals * * *. The county Board of Revision shall thereupon certify to the Board of *372 Tax Appeals a transcript of the record of the proceedings of the county Board of Revision pertaining to the original complaint, and all evidence offered in connection therewith. * * *
“The Board of Tax Appeals may order the appeal to be heard upon the record and the evidence certified to it by the county Board of Revision, or it may order the hearing of additional evidence, and it may make such investigation concerning the appeal as it deems proper.”
The record of the hearing before the Board of Tax Appeals discloses the following:
“Mr. Jackson: Am I correct in understanding that this being a hearing de novo that the findings of the Board of Tax Appeals and its decision do not have any presumptive validity and we have no additional burden to overcome ?
“Mr. Sawicki: I believe you are referring to the Board of Revision.
“Mr. Jackson: That is what I mean, the Board of Revision.
“Mr. Sawicki: That’s right. Their findings have no bearing on this particular hearing.
“Mr. Jackson: No weight?
“Mr. Sawicki: That is right. That is correct. * * *
ÍÍ* # •
“Q. Now, Mr. Blainey,-have you examined photostats of the appraisal side of the auditor’s appraisal cards as modified by the Board of Revision? A. Yes.
“Q. Do I correctly understand that those cards show for each building a replacement value heading and then a physical value, being the replacement value less the amount of physical depreciation allowed by the board, and then an actual value, which results from applying a further allowance for functional depreciation?
“Mr. Leddon:. I object to the question. What the cards show is not of any importance here at all. What we are after here is the true value in money of this property.
“Mr. Sawicki: Objection sustained.
“Mr. Jackson: I am sure this would be applicable and, therefore, may I simply make an offer to prove that this witness, if he were permitted to answer, would answer the fore *373 going question in the affirmative and would further testify that the total of such actual values on these cards is $2,110,280, which is identical with the assessed value of the buildings fixed by the Cuyahoga County Board of Revision? I just for the record make the offer of proof. * * *

it* * *

“Mr. Jackson: Pardon me. I object solely upon this ground, that I understand this is a hearing ele novo upon the complaint filed with the Cuyahoga County Board of Revision. I understood that it didn’t make any difference what the county Board of Revision did because the Board of Tax Appeals makes a determination upon the basis of the complaint and the evidence.
“Mr. Sawicki: That is correct * * *.

a* * *

“Mr. Jackson: We are complaining about an assessed value. I am sorry. My only point is this. Yesterday I was not permitted to show that the county Board of Revision’s valuation of these buildings conforms to the penny upon a brick and mortar reproduction as immaterial and irrelevant. Now, if the decision of the county Board of Revision has any significance whatever, I should suppose that we are entitled to show its basis, so that we are permitted to argue, at least, that they have used a basis which is wholly inapplicable.

it* * *

‘ ‘ Mr. Jackson: I only want to add what I have in the record. We could have the exact computation made by the county Board of Revision. That is not inquiring into their minds or motives. That is showing what they did and if what they did is material at all, that is something.
“Mr. Sawicki: As I recall, it is my understanding that yesterday you endeavored to inquire as to the processes that were employed by the Board of Revision.
“Mr. Jackson: I merely directed attention to photostatic copies of the cards as adjusted by the Board of Revision and asked what they showed on there, replacement, depreciation, obsolescence, actual value, and what the total of the actual values of the" buildings were and how it compared with the total assessed value. I don’t think that is a mental process.
*374 u # * #
“Mr. Jackson: I would like to offer here a photostatic copy of them because they, at least in this case, did have something to do with it.
“Mr. Sawicki: The board will not accept those.
“Mr. Jackson: I want to put that in the record. That is all.”
It is apparent from the foregoing that the Board of Tax Appeals did not afford appellant sufficient opportunity to present testimony relating to the valuation fixed by the Board of Revision.. The Board of Tax Appeals had only two appraisal figures as to building value presented in the evidence before it. After holding in effect that the appellant had failed to sustain its burden of proof, it could have accepted and adopted any valuation figure based on evidence which in its discretion it considered to be the true value (see Hibschman v. Board of Tax Appeals, 142 Ohio St., 47, 49 N. E. [2d], 949) including the valuation made by the Cuyahoga County Board of Revision, but before doing so it should have permitted examination and cross-examination relative to the determination by the Board of Revision. Failing to do so, this.court is of the opinion that the Board of Tax Appeals erred in not admitting evidence on the valuation upon which it ultimately relied and, accordingly, finds that its decision is unreasonable and unlawful.
The decision is, therefore, reversed and the cause is remanded to the Board of Tax Appeals for further proceedings in accordance with this opinion.

Decision reversed.

Weygandt, C. J., Zimmerman, Taet, Matthias, Bell, Herbert and Peck, JJ., concur.