Matthias, J.
 

 Was the decision of the Board of Tax. Appeals, affirming the order made by the Tax Commissioner, unreasonable or unlawful? That is the question presented.
 

 
 *383
 
 The record discloses that in an audit made by an employee of the sales tax division of the Department of Taxation he found the vendor’s liability for unpaid sales taxes to be $8,023.77 plus a penalty of $1,203.57, a total increase of $9,227.34. In the computation of the sales tax, the books and records of the vendor were expressly disregarded. Those records disclose the total sales during the period of the audit were $338,318.17. The auditor of the Department of Taxation increased that sum to $811,350. In addition to the books of account kept by the vendor, he submitted and offered in evidence the invoices of all the merchandise purchased the sales of which he claims to be exempt. These invoices do not appear to have been considered by the. examiner.
 

 The figures disclosed by the vendor’s income-tax returns show the amount of gross sales for the period as ■$338,318.17 and the amount of merchandise purchased for the period as $197,625.49. The Tax Commissioner deducted the totals shown by the income-tax returns for the purchases of the following materials: Beer (bottled) $7,745.15; case beer $2,630.01; wine $1,893.31; •cigarettes (including cigars and tobacco) $32,042.13; liquor $37,302.70; total $81,613.30, leaving the balance of $116,012.13 as the cost of purchases of food. The Tax Commissioner, in determining the total of food sales to be $232,024.26, used a markup of 100 per cent ■on food purchased for sale and allowed a deduction •of 10 per cent or $23,202.43 for food sold for consumption off the premises. The sum of $208,821.83 was, therefore, fixed as the total taxable food sales.
 

 The cost of liquor purchased for sale by vendor was actually $29,006.51, which figure the Tax Commis•sioner- used in computing the vendor’s taxable sales of liquor. The method followed was to ascertain the ■number of drinks in each bottle and the sale price of
 
 *384
 
 each drink, resulting in a figure which was held to be the total taxable sales of such liquor. The total of such taxable sales of liquor was thus found to be-$94,974.96.
 

 Cigars and tobacco purchased by the vendor for resale were estimated by the vendor to be 10 per cent of the total cigarette purchases, or $3,228.84.
 

 The total
 
 taxable
 
 sales as found by the Tax Commissioner were $307,461.84 out of a total of all sales of $338,318.17 as shown by the income-tax returns. That the records of the vendor were disregarded is disclosed by the fact that the Tax Commissioner recognized only $30,856.33 of vendor’s sales as tax exempt yet found that purchases of beer, wine and cigarettes (excluding cigars purchased, the sales of which were taxable) totaled $41,081.76. The claim that sales of food consumed off the premises amounted to $66,-663.15, as shown by vendor’s records, was not allowed but instead an estimated credit of $23,202.43 was granted. Vendor’s records also show purchases of candy, the sales of which were tax exempt and which the Tax Commissioner did not in any way take into consideration in his computation. The Tax Commissioner reduced the assessment made against the vendor to the sum of $4,012.19, as above set forth.
 

 During the hearing before the Board of Tax Appeals the vendor requested that, in view of the evidence adduced, the board should order an audit of the records of the vendor. That request was rejected,, but the Tax Commissioner did agree to examine vendor’s records to determine whether the assessment, by the Tax Commissioner was correct. This was not done and the Board of Tax Appeals, without further-notice to vendor, on September 23, 1948, affirmed the-final assessment order of the Tax Commissioner.
 

 The reasons given for such affirmance are set forth in the entry of the Board of Tax Appeals as follows:
 

 
 *385
 
 “It appears that the audit or audits were made by spot cheek aided by appellant’s federal income-tax reports.
 
 The usual accepted markup on percentages was used and usual percentages employed for exempted articles sold and food consumed off the premises. Appellant’s books and records were disregarded.
 
 An inspection of such as were offered in evidence discloses that they were insufficient as a source from which an audit could have been made. Such being true the Tax Commissioner was authorized in resorting to the means pursued. It is the rule that the action of an administrative board or officer, when done in the course of his official duty, is presumed to be done in good faith and imports verity. It is equally true
 
 that the burden rests upon the appellant to overcome such a presumption.
 
 Has the appellant established the truth of his claimed errors?” (Emphasis supplied.)
 

 It is now urged that the decision of the Board of Tax-Appeals was against the weight of the evidence, in that the evidence submitted by the vendor was not accepted, and that the decision was unreasonable and unlawful.
 

 Much weight was given in the decision of the Board of Tax Appeals to the fact that the Tax Commissioner had made a finding against the vendor, and the board rested its decision on the rule that “the action of an administrative board or officer, when done in the course of his official duty, is presumed to be done in good faith and imports verity.” That this rule of law applies where the action of an administrative board or officer is being tested in an appeal to the courts is unquestioned. The following statement from 42 American Jurisprudence, page 680, Section 240, is pertinent:
 

 “The genera] rule that in the absence of evidence to the contrary, public officers will be presumed to have properly performed their duties and not to have acted
 
 *386
 
 illegally, but regularly and in a lawful manner, is usually applied when regulations, decisions, or orders of administrative officers are challenged in court, and the burden of proving otherwise is upon the party complaining. The fact that a full hearing was given is often stressed as a circumstance by which the courts are led to give force to the presumption favoring administrative action, and some authorities have limited the operation of this presumption to the action of tribunals acting in a judicial or quasi-judical capacity in which they may fairly be supposed to preserve a judicial attitude. The presumption has been held not to apply with the same force to a legislative tribunal or to a tribunal which possesses not only to some extent the powers of a court, but also to some extent the powers of a public prosecutor.”
 

 This court has repeatedly held that, although the Board of Tax Appeals exercises quasi-judicial functions, it is nevertheless an administrative body.
 

 Sections 5611 and 5611-1, General. Code, establish the procedure which the Board of Tax Appeals must follow when an appeal is taken to it from an order of the Tax. Commissioner. These sections provide in part as follows:
 

 Section 5611. “Upon the filing of such notice of appeal the Tax Commissioner shall certify to the Board of Tax Appeals a transcript of the record of such proceedings before him together with all evidence, documentary or otherwise, considered by him in connection therewith. Such appeals or applications may be heard by the Board of Tax Appeals at its office in the city of Columbus, Ohio, or in the county where appellant resides, or it may cause one or more of its examiners to conduct such hearing and to report to it his or their findings for affirmation or rejection. The Board of Tax Appeals may order the appeal to be
 
 *387
 
 heard upon the record and the evidence certified to it by the Tax Commissioner,
 
 but upon application of any interested party shall order the hearing of additional evidence; and it may make, or cause to be made, such investigation with respect to the appeal as it may deem proper.”
 
 (Emphasis supplied.)
 

 Section 5611-1. “The decisions of the Board of Tax Appeals may affirm, reverse, vacate or modify the tax assessments, valuations, determinations, findings, computations or orders complained of in the appeals or applications determined by it and its decisions shall become final and conclusive for the current year, unless reversed, vacated, or modified as in Section 5611-2 of the General Code of Ohio provided. When a decision of the Board of Tax Appeals shall become final the Tax Commissioner and all officers to whom such decision shall have been certified shall make such changes in their tax lists or other records as the decision may require.”
 

 See
 
 Zangerle, Aud.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 563, 41 N. E. (2d), 369;
 
 Higbee Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 325, 43 N. E. (2d), 273;
 
 Clark
 
 v.
 
 Glander, Tax Commr.,
 
 151 Ohio St., 229.
 

 Sections 5611 and 5611-1, General Code, contemplate full administrative appeals from the orders of the Tax Commissioner, in which the parties are entitled to produce evidence in addition to that considered by the Tax Commissioner, and the Board of Tax Appeals is authorized to exercise investigational powers to ascertain further facts. The General Assembly has not authorized any presumptions in favor of the rulings or orders of the Tax Commissioner, and the rule relied upon by the Board of Tax Appeals in its entry is applicable only in appeals from administrative bodies to courts. If it were otherwise, this presumption of verity would attach to the actions of any em
 
 *388
 
 ployee of the Tax Commissioner, no matter how subordinate his duties might be, and taxpayers dealing with the Department of Taxation would always be faced by a presumption of correctness. This clearly was not the intention of the General Assembly in enacting Sections 5611 and 5611-1, General Code, and the Board of Tax Appeals erred when it based its finding in part upon such presumption.
 

 The General Assembly, however, did intend to import good faith and verity to the decisions of the Board of Tax Appeals appealed to this court. Section 5611-2, General Code, provides in part:
 

 “If upon hearing and consideration of such record and evidence the Supreme Court is of the opinion that the decision of the Board of Tax Appeals appealed from is reasonable and lawful it shall affirm the same, but if the Supreme Court is of the opinion that such decision of the Board of Tax Appeals is unreasonable or unlawful, it shall reverse and vacate same or it may modify same and enter final judgment in accordance with such modification.”
 

 See
 
 Wheeling Steel Corp.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 71, 54 N. E. (2d), 132.
 

 The Board of Tax Appeals also erred, when it affirmed the order of the Tax Commissioner, in entirely disregarding the evidence of the vendor as disclosed by his books and records. No claim was made and
 
 no
 
 evidence offered to substantiate any inference that those books of account are fraudulent. They were offered in evidence in the hearing before the Board of Tax Appeals, and detailed statements taken from them by an independent auditor were also introduced. The claim for exempt sales, other than sales of food for consumption off the premises, was supported by invoices disclosing the cost of such food. Records establishing the amount of such sales of food for eon
 
 *389
 
 sumption off the premises were likewise disregarded and the deduction for such sales limited to 10 per cent. This court, in cases appealed in which the vendor did not have records, has said repeatedly that it is the duty of the vendor to keep records, but likewise this court has allowed the introduction of parol evidence to establish exemptions in cases where such records were not available.
 
 Jones, d. b. a. Tennessee Barbecue,
 
 v.
 
 Glander, Tax Commr.,
 
 150 Ohio St., 192, 80 N. E. (2d), 766.
 

 It does not appear consistent to accept parol evidence in lieu of missing books of accounts in some cases and then completely disregard evidence in the form of books of account introduced in support of a claim. It would seem that full compliance with the provisions of the sales tax law is shown where a vendor keeps records of the total amount of his sales and in addition thereto produces evidence in the form of receipted bills or otherwise of the goods purchased for resales exempt from the sales tax.
 

 The arbitrary application of a specific preadopted markup percentage of proceeds of sales over costs in determining the sales tax which should have been collected and the arbitrary application of a specific preadopted percentage of sales of food for consumption off the premises, without consideration and in disregard of evidence documentary or otherwise, adduced by the vendor, cannot be commended. In this case the proceeds from food sales was arbitrarily fixed at 100 per cent above the cost, and the exemption for sales of food consumed off the premises was arbitrarily fixed at 10 per cent of the total sales. It is common knowledge that the so-called markup or profit varies somewhat with the location and the class of restaurants or grills where sales are made. The markups and percentages applied were supported by no evi
 
 *390
 
 deuce in the record and are completely at variance with and contrary to the facts as contended were shown by the records of the vendor but which were not considered by the board.
 

 ' In a hearing on appeal by the Board of Tax Appeals from an order of the Tax Commissioner, where the record contains substantia] evidence supporting the claim of the appellant, the order of the Tax Commissioner must be supported by something more than a mere presumption in its behalf. Otherwise there would be no opportunity or occasion for a review of such order on appeal.
 

 The decision of the Board of Tax Appeals is, accordingly, reversed and the cause remanded to the Board of Tax Appeals for rehearing in accordance with this opinion.
 

 Decision reversed.
 

 Weygandt, C. J., Hart, Zimmerman, Stewart,. Turner and Taft, JJ., concur.