Taft, J.
For the reasons stated in Allied Stores of Ohio, Inc., v. Bowers, Tax Commr., ante, 116, the taxpayer’s contentions with respect to property held in storage must be rejected, except to the extent that the property so held represented iron ores imported by the taxpayer from foreign countries.
As to such iron ores, the claim for tax exemption is based upon that provision of Clause 2 of Section 10 of Article I of the Constitution of the United States which reads:
“No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws * * ”
That constitutional provision has been applied so as to prevent a state tax on property imported from outside the United States so long as it remains in the original package. Hooven & Allison Co. v. Evatt, Tax Commr., 324 U. S., 652, 89 L. Ed., 1252, 65 S. Ct., 870; Brown v. Maryland, 12 Wheat., 419, 6 L. Ed., 678; Low v. Austin, 13 Wall., 29, 20 L. Ed., 517.
However, where the original package in which property was so imported has been broken, it has been held that the foregoing constitutional provision does not prevent imposition of a state tax upon the property which had previously been imported. May v. New Orleans, 178 U. S., 496, 44 L. Ed., 1165, 20 S. Ct., 976.
In the instant cases, it is not necessary to determine whether commodities, which are usually imported in bulk as is iron ore, may ever be exempt from state taxation by reason of that constitutional provision after such commodities have been taken from the ship or vessel that carried them to this country. Cf. Mexican Petroleum Corp. v. City of South Portland, 121 Me., 128, 115 A., 900, 26 A. L. R., 965, and Tres Ritos Ranch Co. v. Abbott, Treas., 44 N. Mex., 556, 105 P. (2d), 1070, 130 A. L. R., 963, with In re Taxes Pacific Guano & Fertilizer Co., 32 Hawaii, 431, and Mexican Petroleum Corp. v. Louisiana Tax Commission, 173 La., 604, 138 So., 117.
*125 Although it does not appear that the Supreme Court of the United States has ever been called upon to determine when fungible goods, such as iron ore, cease to be imports within the meaning of the foregoing constitutional provision (see annotation, 89 L. Ed., 1279,1284 et seq.), that court has by its five to four decision in May v. New Orleans, supra, provided some guidance with respect to that problem. In that case, it was held that, where goods were packaged in small packages by a manufacturer and then packed in a larger package for shipment, such goods, although still in the unbroken smaller packages, were subject to state taxation as soon as the large shipping package had been broken.
In the opinion by Mr. Justice Harlan it is said:
' ‘ * * * the question in the present case is whether the plaintiffs, prior to the assessment complained of, had so acted upon the goods imported by them as to incorporate them with the mass of the property in the state, and bring them, while in their possession, within the range of local taxation.
C ( * * *
“* * # the ‘original package’ in the present case was the box or case in which the goods imported were shipped, and when the box or case was opened for the sale or delivery of the separate parcels contained in it, each parcel of the goods lost its distinctive character as an import and became property subject to taxation by the state as other like property situated within its limits. ’ ’
In the instant cases, it appears from the agreed statement of facts that the taxpayer imported iron ores from five different countries; that these ores were purchased for use in the taxpayer’s furnaces; that the taxpayer maintained a supply of each of these “ores sufficient to meet its estimated requirements for * * * at least three months”; that these ores were moved into a port of entry on vessels, each of which carried only one particular grade of ore; that, at the port of entry, the entire cargo of ore from a particular vessel was discharged into railroad cars and transported in bulk to a storage yard in Youngstown, Ohio, adjacent to the taxpayer’s manufacturing facilities; that there it was unloaded and placed in *126 a separate storage pile in a separate area of the ore yard; that “a separate storage pile was maintained for each” of the five grades of imported ore and no such grade of ore was mingled with other ore or property “except that different vessel shipments of * * * ore” from a particular country “loere piled * * * on top of * * * other” ore from that particular country “as such additional shipments arrived”; and that “from time to time, as needed, a portion of the * * * ore in each separate storage pile was removed from such pile and transported to * * stock bins” or “stock houses * * * for use in * * * furnaces # * * of the” taxpayer.
If, pursuant to Clause 2 of Section 10 of Article I of the Constitution of the United States, the same protection from state taxes can be accorded to an imported fungible commodity such as iron ore as is accorded to goods imported in a package, we do not believe that such protection can extend to such iron ore (1) after it has been commingled with other iron ore imported at a different time, even though such other iron ore is of the same grade and was imported from the same place, and (2) after portions of such iron ore have been removed for use in manufacturing.
If, as held in May v. New Orleans, supra (178 U. S., 496), goods still in their original manufacturer’s package are taxable notwithstanding Clause 2 of Section 10 of Article 1 of the Constitution of the United States, if they were shipped in a larger package and the larger package has been broken, we cannot comprehend how a shipment of iron ore shipped and received in this country in one vessel can be regarded as nontaxable by reason of that constitutional provision (1) after it has been mixed with other ore received from another vessel and (2) after part of such iron ore has been separated from the whole for use in manufacturing.
The taxpayer’s complaint with respect to the failure of the Tax Commissioner to make any deduction from the tax base of any amount on account of “drawings” is based upon Section 5701.03, Revised- Code, which, prior to October 4, 1955, read so far as pertinent:
“* * * ‘personal property’ includes every langible thing *127 which is the subject of ownership * * * other than patterns, jigs, dies, drawings * * V’
The taxpayer’s evidence as to the value of “drawings” is largely evidence as to the cost of drawings and specifications. The evidence in the record does not require the conclusion as a matter of law that the specifications referred to in this evidence of cost were part of the drawings. Actually, there is much that would support a conclusion that, although related to the drawings, the specifications were not a part of the drawings; and the Board of Tax Appeals apparently reached that conclusion. The statute relied on does not use the word ‘ ‘ specifications. ’ ’
However, the evidence does show conclusively that there were a very substantial number of drawings. Also, there is evidence disclosing that both the cost of such things as some of the “tracings, blueprints and supplies” and also the charges for some of the “detail draftsmen and tracers” amounted to several thousands of dollars. Without suggesting that there is no other evidence as to value or cost of the drawings, we believe that anyone will concede that these items represented part of the cost of these drawings. Even though the cost of drawings does not determine their “true value” for tax assessment purposes (see Sections 5711.21 and 5711.18, Bevised Code), such cost is some evidence of such value, at least at a time as here while the items to which they relate are being constructed and before the completion of those items.
Notwithstanding the foregoing evidence as to the inclusion of a substantial cost in preparing a very substantial number of drawings in the book cost of the construction projects, which was taken as the value of those projects for taxation purposes, no deduction at all from that hook cost was made for the value of “drawings.” In such an instance, the Tax Commissioner cannot avoid the provisions of the statute relating to “drawings” by arguments that he is only taxing the construction projects and that the books of the taxpayer show everything that is taxed as allocated to the costs of those projects. Such arguments were rejected by this court in Goodyear Aircraft Corp. v. Peck, Tax Commr., 162 Ohio St., 200, 122 N. E. (2d), 700.
*128 As stated in paragraph three of the syllabus of Bloch v. Glander, Tax Commr., 151 Ohio St., 381, 86 N. E. (2d), 318:
‘ ‘ Where the record on appeal to the Board of Tax Appeals from an order of the Tax Commissioner contains substantial evidence supporting the claim of the appellant, the order of the commissioner, to be sustained, must be supported by something more than a mere presumption in its behalf.”
It follows that as to case No. 34872 the decision must be reversed and that as to case No. 34868 it must be affirmed except to the extent that it relates to the claimed deduction from the tax base on account of “drawings,” and the cause is remanded to the Board of Tax Appeals for further proceedings.

Judgments accordingly.

WeygaNdt, C. J., ZimmbrmaN, Bell, Matthias and Herbert, JJ., concur.
Stewart, J., concurs except as to that portion of paragraph one of the syllabus between “(1)” and “(2).”