For the reasons stated, the judgment of the trial court should be affirmed.

DIXON, D. B. A. TIPPIN INN, APPELLANT, *v.* BOWERS, TAX COMMR., APPELLEE.

438

■■■■■■■■■■■■■■■■■■■

(No. 7195—Decided June 18, 1963.)

*Messrs. Mitchell & Tobin*, for appellant.
*Mr. William B. Saxbe*, attorney general, and *Mr. Edgar L. Lindley*, for appellee.

DUFFEY, J. This is an appeal from a decision of the Board of Tax Appeals affirming a sales tax assessment as made by the Tax Commissioner of Ohio.

Appellant operates a bar and food service business. She has a D-2 permit, and since October 1958 also holds a D-5 permit. The audit periods are from January 1, 1957, to April 2, 1959 (assessment K-6433), and from April 3, 1959, through December 31, 1960 (assessment K-6434). During these periods, appellant had gross sales of approximately $260,000 and paid only $26.50 in taxes. She filed only four of the eight returns required and has no adequate records of the taxable sales. Accordingly, an assessment against her is controlled by the provisions of Section 5739.10, Revised Code. The amount of gross receipts being known, the burden was upon the vendor-appellant to prove what part, if any, of such receipts were nontaxable or tax-exempt. On the other hand, the gross receipts are only presumptively the basis for taxation, and the vendor is entitled to adduce parol evidence as well as records to sustain her burden. See *Jones, d. b. a. Tennessee Barbecue, v. Glander, Tax Commr.* (1948), 150 Ohio St., 192; *Bloch v. Glander, Tax Commr.* (1949), 151 Ohio St., 381. Attention is also directed to the provision of Section 5739.10, Revised Code, that no records need be kept of tax-exempt sales.

In the present case, the only records as to sales were a few cash register tapes for a brief period within the audit period. The auditor-examiner used these tapes as a basis for deter-

mining a percentage breakdown of the gross receipts into exempt and nonexempt, taxable and nontaxable sales, and determined the initial assessment. The tapes contain a code which appellant testified is (I) beer; (II) wine; (III) whiskey; (IV) food and miscellaneous sales. Appellant requested the commissioner to make a reassessment. Upon re-examination, the commissioner made an adjustment credit for sales of food for off-premises consumption. She was also granted an increased allowance for sales of liquor below the taxable bracket. The only controversy before the board and in this court is with respect to the allowance on liquor sales.

During the first portion of the audit period the exempt bracket was for sales under forty-one cents and in the latter portion of the period for sales under thirty-one cents. The appellant's evidence shows that during these periods her prices for bar whiskey per shot were twenty-five cents during the first period and thirty cents in the latter period. For the same periods, prices were forty cents and forty-five cents, respectively, for better quality whiskey. The cash register tapes show sales in amounts of twenty-five cents, fifty cents, sixty-five cents, seventy-five cents, etc., and in the latter period sixty cents, seventy-five cents, ninety cents, etc. The auditor's initial assessment was based upon a percentage allowance computed strictly from the figures as registered on the tapes at below the taxable bracket. The commissioner, upon reassessment, made a further allowance for below bracket sales—apparently about ten per cent.

Upon appeal to the board, the appellant submitted the testimony of her husband, the manager of the business. In his testimony, he states, in effect, that many of the items registered on the tapes at a figure higher than the taxable bracket were actually multiple sales, i. e., the figure of sixty cents represented two thirty-cent sales; seventy-five cents represented a thirty and forty-five cent sale, etc. He testified extensively as to the nature of the business, the type of customer, their buying habits, etc.

In granting a greater allowance than in the auditor's initial determination for below bracket sales on liquor, it is apparent that the commissioner (and therefore the board in affirm-

ing the commissioner) accepted the proposition that not all figures on the tapes registered at above bracket represented a single taxable sale. Yet we cannot reconcile the allowance granted with any evidence in the record. If Mr. Dixon's testimony was not worthy of belief, obviously no additional allowance should have been given. If fully believed, the allowance should have been much greater. Of course, a trier of facts is entitled to believe testimony in part and reject it in part. But there must be some rational basis for the selection of that believed and that rejected. No attempt was made by the board to indicate the basis for the allowance given. We can see no evidentiary grounds upon which to justify the allowance as granted, and none has been suggested by the Attorney General.

It might be noted that the order of the commissioner is not entitled to any presumption of validity. The hearing before the board is the level at which the taxpayer is entitled to full hearing rights. *Bloch* v. *Glander, Tax Commr.* (1949), 151 Ohio St., 381.

We recognize that on the administrative level "horse trading" or compromise has probably been a part of tax collection since time immemorial. However, where the taxpayer rejects an allowance and insists upon his right to a full hearing, he is entitled, and the board has the obligation, to decide on the basis of the evidence adduced and produce a result consistent with the evidence. We do not mean to suggest that Mr. Dixon's testimony or the supporting evidence necessarily had to be accepted either in whole or in part. The board as a trier of facts and not this court has the duty and obligation to evaluate the evidence. However, we are not impressed by the argument that the taxpayer received some favor or benefit in that the board might have rejected the evidence in its entirety. If it could do so, it did not; and not having done so, it must arrive at some supportable conclusion. Accordingly we find that decision of the board to be unreasonable.

In the perfection of an appeal from the board, the fifth paragraph of Section 5717.04, Revised Code, requires the "filing by appellant of a notice of appeal" with the board. It also requires the "filing" in this court of a notice of appeal and the filing of a "Proof of the filing of such notice with the board

* * *.'' The record shows appellant fully complied with these requirements.

The sixth paragraph of that section has two provisions applicable here. It requires that the Tax Commissioner be a party appellee. Appellant has done so. It also provides that ''Unless waived, notice of *the* appeal shall be *served* upon all appellees by registered mail.'' (Emphasis added.) In our opinion, this provision does not require the filing of a notice of appeal with the Tax Commissioner. Rather, notice of the fact of an appeal must be given or a waiver obtained. There is no statutory provision as to the filing of proof of either waiver or service. In the event of service, any form of notice is sufficient if it reasonably apprises the appellee of the taking of the appeal. This interpretation of Section 5717.04, Revised Code, is in conflict with a statement made in *Evans, d. b. a. Evans' Pharmacy,* v. *Bowers, Tax Commr.* (1959), 112 Ohio App., 303. However, in that case, this court was concerned with a different question and did not directly deal with the nature of the notice to be given the Tax Commissioner.

The decision of the Board of Tax Appeals is reversed and vacated. The case is remanded for further proceedings.

*Decision reversed.*

DUFFY, P. J., concurs.

BRYANT, J., dissenting. As I understand it, the chief question before this court on appeal from the Board of Tax Appeals is whether ''the decision of the board appealed from is reasonable and lawful.'' If it is it shall be affirmed, but if ''upon hearing and consideration of such record and evidence'' this court ''decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.'' (Section 5717.04, paragraph 8, Revised Code.) As I am of the opinion that the decision of the Board of Tax Appeals is both reasonable and lawful, I am obliged to dissent from the decision of the majority of this court in this case.

As I view the proceedings in this case, it would appear

that they may be divided into the following stages: (a) determination of the original deficiency assessment and penalty including steps taken by the tax examiner; (b) review and redetermination of the assessment and penalty and final order by the Tax Commissioner; (c) review and affirmance by the Board of Tax Appeals on appeal; and (d) hearing, consideration of the record and evidence by this court upon appeal from the board.

As I understand the majority decision, the reversal is based upon the concept that the original steps in determining tax liability or deficiency are at the best merely preliminary and the real and only important contest does not take place until the taxpayer has a hearing before the Board of Tax Appeals. In my opinoin this is incorrect. The taxpayer is under a duty to file semi-annual reports and in the first instance to determine his own tax. The taxpayer, although operating a large establishment, filed the first four semi-annual reports due for the two years of the four-year audit period and these were admittedly not correct. The taxpayer filed no semi-annual reports at all for the last two years of the audit period during which four such reports should have been filed.

It is admitted by the taxpayer that liquor, beer, cigars, food and other sales totaled $260,000 during the four-year period, yet this taxpayer purchased sales tax stamps or otherwise paid sales tax in the amount of $26.50 for the entire period. This taxpayer at the peak of business operations employed seventeen bartenders, barmaids or other employees; operated one or two cash registers, with separate keys for each class of business, making subtotals and grand totals and recording the amount of each sale, and operated from 5:30 a. m. to 2:30 a. m. on business days. It used the services of an accounting or bookkeeping firm. I find it difficult to excuse such clear and unmistakable disregard of the entire sales tax law on so colossal a basis as a mere innocent mistake.

As I understand the provisions of the sales tax law, there is a presumption of regularity which attaches at each stage in the proceeding and unless the taxpayer is able to overcome this presumption, either by showing that the law has been wrongly applied or by the introduction of evidence showing there has

been a mistake of fact, the determination at such stage in the proceedings becomes final and collectable.

It appears that the majority opinion finds some fault or takes some exception to the action of the Tax Commissioner in reducing the tax liability of the taxpayer. It is difficult to see how the taxpayer can urge such an objection. It would seem clear that no complaint is urged today with reference to food sales, cigars or other personal property except intoxicating liquor. I am unable to determine just what basis the majority feels that the Tax Commissioner should have used other than that which he did.

As has already been pointed out, this court is limited to a determination of whether the board's decision is or is not reasonable or lawful, and in making that determination we are required to give consideration only to the record and evidence in the case. Again, in my opinion, the taxpayer was required to overcome the presumption of regularity and carried the burden of proving that the board's decision was unreasonable or unlawful, or both. She did not do so, in my opinion.

When testimony was being taken for submission to the Board of Tax Appeals, every consideration was shown to the taxpayer and her counsel. On one occasion, when the matter was set for hearing, neither the taxpayer, her manager nor anyone else from the place of business, other than her counsel, showed up. Nevertheless, such default was waived and other continuances were granted for the convenience of counsel for the taxpayer. When the hearing was held, only a single witness appeared on behalf of the taxpayer, namely, John Dixon, husband of Lois Dixon.

On behalf of the Tax Commissioner at this hearing, the testimony of the tax examiner who made the original investigation was offered and apparently would have been entered on the record except for the interference and objection of counsel for the taxpayer to the effect that this testimony was not of any consequence. I do not so regard it.

It is apparent that the board did not accept at face value the rather unrealistic testimony of the sole witness for the taxpayer. It was he who was able to look at such figures as $.60, $.90, $1.20 and, with no help from any other source than his

memory, testify that they were not what they appeared to be, but rather a collection of smaller individual sales, each of which of course was tax-exempt. It appears that for some of the time, the taxpayer sold the cheaper brands of liquor at $.25, later sold them at $.30, and that the more expensive brands were sold at $.40 a drink. Perhaps the height of the accomplishments of this witness was reached when he was able, as the majority opinion points out, to look at the figure $.75 and testify that it represented a $.30 sale and a $.45 sale.

This becomes even more remarkable when it is recalled that the two audit periods covered four years between January 1, 1957, and December 31, 1960, and that the witness was testifying on June 5, 1962. In any event, it is apparent that the board regarded the witness' testimony as unacceptable, perhaps on the ground that it was self-serving or, as would appear to me, evasive and difficult to accept.

It may also have been that the board in weighing the testimony of this witness took into account such facts as (1) the four semi-annual reports filed and the sales tax paid were grossly inadequate; (2) no returns whatever were filed for four semi-annual periods; (3) appellant's manager had at least twelve years experience as bartender or manager, including seven years bartender or manager for other owners, and (4) no excuse was offered for not submitting cash register tapes for both of the cash registers for the entire audit period.

However, no useful purpose will be served by a further analysis of the testimony for the reason that this court is not permitted to substitute its judgment for that of the Board of Tax Appeals in this type of appeal. In the case of *The Fair Store Co.* v. *Board of Revision of Hamilton County* (1945), 145 Ohio St., 231, the Supreme Court of Ohio in a "By The Court" decision wrote as follows:

"We are asked to reverse the decision of the Board of Tax Appeals.

"In the case of *Smith* v. *Board of Revision of Washington County*, 138 Ohio St., 564, 37 N. E. (2d), 386, it was held:

" 'In an appeal to the Supreme Court under Section 5611-2, General Code, from a decision of the Board of Tax Appeals fixing the true value of real property for the purposes of taxa-

tion, the court must find such decision unreasonable or unlawful upon the record and the evidence to reverse or modify the same.'

"*The statute grants to the Board of Tax Appeals wide discretion in arriving at a valuation and this court had repeatedly said that it will not substitute its judgment for that of the Board of Tax Appeals.*

"In the case of *Citizens Building Co. of Cleveland* v. *Board of Revision of Cuyahoga County*, 141 Ohio St., 47, at page 52, 46 N. E. (2d), 413, it is held:

"'*This court has no power to substitute its judgment for that of the Board of Tax Appeals but determines only whether the valuation fixed by that board it [is] reasonable and lawful. * * *'* See *Ramsey* v. *County Board of Revision of Franklin County*, 141 Ohio St., 366, 48 N. E. (2d), 102." (Emphasis added.)

In addition to what has been set forth above, I have carefully examined the record before us for some evidence that there was a compliance with the provisions of Section 5717.04, *supra*, by serving a notice of appeal upon the Tax Commissioner. As I understand it, there are two parties to this proceeding, Lois Dixon, d. b. a. Tippin Inn, who is the appellant, and Stanley J. Bowers, Tax Commissioner of Ohio, who is the appellee. There can be little doubt that the Tax Commissioner is a necessary party to this appeal, nor can there be any doubt that it was the duty of the taxpayer to serve the full notice of appeal upon the Tax Commissioner. That being the case, the record must affirmatively so indicate, otherwise the appeal has not been properly effected and must be dismissed.

It must be borne in mind that so far as a notice of appeal is concerned, there must be a strict compliance and it is not a field in which implied waivers are permitted. The Supreme Court of Ohio has held that it lacks jurisdiction even where a notice of appeal has been filed setting forth errors complained of, where they are not specific or precise in terminology. See *Queen City Valves, Inc.,* v. *Peck, Tax Commr.* (1954), 161 Ohio St., 579, *Lawson Milk Co.* v. *Bowers, Tax Commr.* (1961), 171 Ohio St., 418, and the recent case of *Richter Transfer Co.* v. *Bowers, Tax Commr.* (1962), 174 Ohio St., 113. In the last-named case, the court stated the rule as follows:

"Strict compliance with the statutory requirements with respect to appeals provided for in Chapter 5717, Revised Code, is required."

As I understand it, where several notices of appeal are required, each of such notices must be filed within the prescribed time and an affirmative showing thereof made to appear in the record, and the service of a proper notice on one of such parties does not forgive or excuse the failure to serve a notice on another such party. In the case of *Kenney* v. *Evatt, Tax Commr.* (1945), 144 Ohio St., 369, the court was considering an appeal from a decision by the Board of Tax Appeals in which a notice of appeal had been served upon the Tax Commissioner, but not upon the Board of Tax Appeals. Notice of appeal was required to be filed with the board pursuant to the provisions of Section 5611-2, General Code (Section 5717.04, Revised Code). In course of the opinion in the *Kenney case, supra,* it was stated "By the Court" as follows:

"The notice of appeal to this court recites that such notice was sent by registered mail to the Tax Commissioner.

"Section 5611-2, General Code, reads in part as follows:

" 'Such appeals shall be taken within thirty days after the date of the entry of the decision of the Board of Tax Appeals on the journal of its proceedings, as provided by Section 5611-1 of the General Code of Ohio, by the filing by appellant of a notice of appeal with the Supreme Court of Ohio *and with the Board of Tax Appeals.* Such notice of appeal shall set forth the decision of the Board of Tax Appeals appealed from and the errors therein complained of. Proof of the filing of such notice with the *Board of Tax Appeals* shall be filed with the Supreme Court.' (Emphasis ours.)

"The transcript of the record of the proceedings of the Board of Tax Appeals does not show that a notice of appeal was filed with that board as required by that section.

"The giving of notice of appeal to the Tax Commissioner did not constitute a compliance with the mandatory provision of Section 5611-2, General Code, for notice to the Board of Tax Appeals. See *Johnson,* v. *Sweeney, Secy. of State,* 140 Ohio St., 279, 43 N. E. (2d), 239."

Counsel for appellant appeared to place reliance upon a

decision of the Board of Tax Appeals in the case of *William Allen, d. b. a. Bismark Grill,* v. *Stanley J. Bowers, Tax Commissioner,* dated April 16, 1959, case No. 38468, Board of Tax Appeals. I have examined the opinion submitted by agreement. As I view it, the most that can be said for the *Allen decision, supra,* is that the board placed some credence on the testimony of the witness or witnesses for the taxpayer in that case. I am unable to find any basis for holding that because the board places credence on the testimony of one witness, it must therefore place identical credence on the testimony of another witness.

I have not overlooked the fact that the file contains two printed and filled-out forms entitled "Notice of Filing Proceedings." It appears that one of such forms was sent to the attorney for appellant and another to the attorney for appellee. They were made out on October 24, 1962, and, according to the endorsement on the back, were mailed on October 24, 1962. The burden of these notices is that proceedings described in the caption thereof have been filed. By no stretch of the imagination can these two documents, served by mail upon opposing counsel, be regarded as the equivalent of notices of appeal. Even if they could, they were sent too late, as the decision of the board was journalized on September 19, 1962, and notices of appeal therefrom are required to be filed within thirty days after the date of the entry of the decision of the board on the journal of its proceedings.

Thus it is that the sixth paragraph of Section 5717.04, *supra,* provides in part as follows:

"In all such appeals the commissioner or all persons to whom the decision of the board appealed from is required by such section to be certified, other than the appellant, shall be made appellees. Unless waived, *notice of the appeal shall be served upon all appellees by registered mail.*" (Emphasis added.)

Inasmuch as appellant has clearly designated the Tax Commissioner as the appellee, it would appear that no question can be raised at this point as to the necessity for the service of a notice of appeal with all the appended documents upon the Tax Commissioner and affirmatively showing the same in the record in this case.

The record being defective in this respect, in my opinion, the appeal should be dismissed and the cause remanded to the Board of Tax Appeals for enforcement of its order.

(November 5, 1963.)

ON MOTION for reconsideration.

*Per Curiam.* Appellee Tax Commissioner has filed a motion for reconsideration. In the principal opinion the majority of the court held the order of the board to be unreasonable in that it was not consistent with, and therefore unsupported by the evidence.

We reaffirm our previous decision to reverse and remand to the board for further proceedings. The motion for reconsideration is overruled.

*Motion overruled.*

DUFFY, P. J., and DUFFEY, J., concur.
BRYANT, J., dissents.

DUFFEY, J., concurring. In the present case the taxpayer's position was, in effect, that the figures on the cash register tapes were merely proof of *receipts* and did not represent *sales* —or at least did not accurately reflect the sales. Testimony to support this was given. No evidence whatsoever was offered by the department on how these figures could be modified. Cf. *Bloch* v. *Glander, Tax Commr.* (1949), 151 Ohio St., 381, paragraph four of the syllabus; *Youngstown Sheet & Tube Co.* v. *Bowers, Tax Commr.* (1957), 166 Ohio St., 122, paragraph five of the syllabus. We therefore held that the reassessment was unsupportable on the evidence. Cf. *The Hippodrome Building Co.* v. *Cuyahoga County Board of Revision* (1962), 117 Ohio App., 102.

As I understand appellee's new contention, it starts on the premise that the board has no authority or ''jurisdiction'' to *increase* an assessment as made by the Tax Commissioner. From this premise, appellee contends that in affirming the commissioner without opinion, the board might have rejected

all the taxpayer's evidence, *i. e.*, disbelieved it in its entirety. Although the board would thereby be holding the reassessment to be wrong on the facts, yet the error would be against the state, and if the board could not increase the assessment, it would affirm the commissioner. From this it follows that since the board gave no findings or opinion as to the basis of its action, it does not appear of record that it acted unreasonably and, *ergo*, we must presume it acted reasonably. As an illustration, if the board found sales taxable at $100, appellee contends that the board could not increase an assessment of $50 by the commissioner. Rather, the board would have to simply affirm it at $50 regardless of the fact that the proper assessment under the law and evidence would be $100.

As a rule of law, such a "one-way street" would vest great authority in the Tax Commissioner. It would also deprive the state of Ohio of protection against human errors in handling the massive amount of claims and disputes before the department. Of course, there is no such limitation in the federal tax system.

In support of its position, appellee discusses at length the procedure before the commissioner's staff, and refers to the "sales, excise and highway use tax hearing board." Such a "board" is merely a matter of office organization somewhat similar to the Attorney General's "office court." While no doubt an excellent system, such a body has no legal authority or standing as such. It is an intra-office advisory group, but the authority and duties are those of the Tax Commissioner.

Appellee's view of the commissioner's authority is stated in its brief at page two.

"* * * It should be noted that under Section 5739.10, Revised Code, if the Tax Commissioner elects to refuse to accept the taxpayer's return, he is authorized to determine the ratio of taxable sales to all retail sales on the basis of test checks and *other information relative* to sales made by such vendor. We submit that this also permits, in the exercise of good conscience, the consideration of such other information as may be within his knowledge for the purpose of granting relief. We submit that the action of the Tax Commissioner is entitled to a presumption of validity under such circumstances. * * *"

Section 5717.02, Revised Code, provides that the commissioner shall certify to the board "*all evidence* considered by him." The board, in passing upon a reassessment, must act upon the transcript certified by the Tax Commissioner and such other evidence as may be submitted to the board. Thus, whether or not the Tax Commissioner can use some private source of knowledge in determining an assessment, that would be totally irrelevant to the validity of the board's determination.

With respect to a presumption of validity, the Supreme Court has specifically held that the *commissioner's* action or order is *not* entitled to any presumption. In *Bloch* v. *Glander, Tax Commr.* (1949), 151 Ohio St., 381, paragraphs two and three of the syllabus state:

"2. The rule generally applied by the courts, that the action of a public officer or board within the limits of the jurisdiction conferred by law is presumed to be valid, in good faith and in the exercise of sound judgment, is not applicable in an appeal from the Tax Commissioner to the Board of Tax Appeals pursuant to Sections 5611 and 5611-1, General Code, which require such board to grant the appellant a full hearing on his complaint.

"3. Where the record on appeal to the Board of Tax Appeals from an order of the Tax Commissioner contains substantial evidence supporting the claim of the appellant, the order of the commissioner, to be sustained, must be supported by something more than a mere presumption in its behalf."

See, also, *Youngstown Sheet & Tube Co.* v. *Bowers, Tax Commr.* (1957), 166 Ohio St., 122.

We are dealing with an administrative body, and the board's function and authority are those provided by statute. Appellee thinks of the proceedings before the Tax Department as if they were a hearing. The commissioner may use his broad powers to gather evidence, and he may accept evidence from the taxpayer. Any such evidence which is properly included in the transcript will come before the board. However, the taxpayer has no legal right under the statutes to a hearing at the commissioner level, nor is such a right created by the fact that for intra-departmental reasons the commissioner has developed a procedure comparable to a hearing. The constitu-

tional right to a hearing arises and is provided for the taxpayer in the proceedings before the board, and only before the board. In view of the fact that the taxpayer, the commissioner, or the board itself may cause additional evidence to be produced, it is apparent that the board must make *de novo* findings of fact. It is the board which fulfills the quasi-judicial function of providing a hearing and making fact determinations. The so-called "appeal" is not a judicial appeal or review. In the words of the court in *Bloch*, it is rather a "full *administrative* appeal," and this requires the board to grant a "full hearing."

I find no statutory basis or anything in this administrative structure which requires that the reassessment determination be considered a limitation of the board's authority. The reassessment is not analogous to the judicial doctrine that a plaintiff's prayer limits recovery, nor is the determination analogous to a judgment. It is the *board's* determination which is in the nature of a judgment and entitled to a presumption of reasonableness and regularity.

The statutory authority of the board is granted in sweeping terms. Section 5717.03, Revised Code, provides that the board may "affirm, reverse, *vacate*, or *modify* the *tax assessments*, valuations, *determinations, findings, computations*, or *orders* complained of * * *." (Emphasis added.) Of course, it seems clear that the board could not act upon an order of which the taxpayer did not complain or specify in his notice of "appeal." Thus, here the taxpayer has not complained of the determinations or findings relating to food sales. The scope of the proceedings before the board was thus limited to the taxable liquor sales. However, as to the order or finding which is brought to the board, I find nothing that limits the board's authority to consider all the evidence on that matter and substitute its determination for that of the commissioner, whether the board's determination thereby results in a lower or higher assessment.

BRYANT, J., dissenting. In my opinion the application for reconsideration is well taken and should be sustained. Counsel for appellant apparently believes that the facts and questions in the case of *Allen, d. b. a. Bismark Grill*, v. *Bowers, Tax Commr.*, Board of Tax Appeals Case No. 38468, are identical

with those in the case now before this court and hence the Board of Tax Appeals must render an identical decision or "explain why." In appellant's brief, page 4, there appears the following statement:

"However, upon such remand the Board of Tax Appeals will have an opportunity to explain why Dixon's appeal received treatment different than that which the *Allen* appeal received."

I have no knowledge of the facts in the *Allen case, supra,* other than those contained in the entry of the board submitted in connection with this case. It is true that both Allen and Dixon sold food, cigars, beer and liquor. Here the taxpayer and permit holder did not testify at all so far as I can ascertain, but instead her husband testified. I have no way of knowing how many tax returns, if any, Allen may have failed to file or whether, among those which were filed, there were figures reported which were sharply below the lowest figure now claimed by the taxpayer.

There are many factors which the board may take into consideration in deciding each case including the credibility or incredibility of the witnesses, the probability or improbability of the story they told and even the explanations as to why a man with the long experience claimed by the taxpayer's husband did not cause the cash registers to be operated correctly, if indeed they were not. As I recall the testimony, the taxpayer's husband, in addition to his long experience in Tippin Inn, had worked previously as a bartender or otherwise in one or more other liquor establishments. He could hardly claim want of knowledge either of the enactment of the Sales Tax Law or of the duties and responsibilities of vendors to make reports and give prepaid receipts which were required during all or part of the period under consideration.