ARMCO, INC., APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLEE.

(No. CA88-01-008—Decided
November 21, 1988.)

*Jones, Day, Reavis & Pogue* and
*Roger F. Day,* for appellant.
*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Board of Tax Appeals.

Appellant, Armco, Inc., appeals a decision of the Board of Tax Appeals ("BTA"), affirming an order of appellee, Joanne Limbach, the Tax Commissioner, which found Armco liable for a permissive county sales and use tax with penalties in the amount of $564,783.77. The assessment was based upon an audit of Armco's purchases from January 1, 1979 through December 31, 1979. The issue to be decided in this appeal is whether the BTA correctly concluded that Armco's purchases were made at the vendor's places of business which were respectively located in several counties which had permissive sales and use taxes.

Armco is a large steel manufacturer with its corporate headquarters located in Middletown, Butler County, Ohio. At all times pertinent to the discussion herein, Butler County did not have a permissive county sales and use tax. The evidence before the BTA consisted solely of the testimony of Fred Sander, the manager of Operating and Materials Supply for Armco's Purchasing Division. Sander testified that Armco's entire purchasing division was located in Middletown, Ohio. In 1979, the division was staffed by forty-three buyers and thirty-two clerical support staff. The Purchasing Division's primary responsibility is to purchase the materials and services needed by Armco's ten steel-producing plants and five non-steel-producing locations, located both inside Ohio and throughout the nation.

Armco stocks over seventy-five thousand different items ranging from janitorial supplies to raw materials used for the production of steel. Each year, the Purchasing Division spends approximately $1.2 billion for various goods and services.

Purchases at Armco begin with the issuance of a requisition form to the Purchasing Division. A buyer then solicits price bids or quotes from

various suppliers or vendors. Sander testified that Armco received both verbal and written bids which established a "quote date." The quote date signified the date and terms of the vendor's offer or bid. As a followup to their bids, sales representatives from Armco's suppliers regularly came to the Purchasing Division in Middletown, where Armco's buyers conducted between ten thousand and twelve thousand interviews per year. The buyer would negotiate the terms of the price quotes with the vendors in an effort to obtain the best possible deal for Armco. Once a particular vendor was selected, the buyer would telephone the vendor and confirm Armco's acceptance and intent to place a purchase order. This established a "confirm date" which set the definite price and terms of the purchase. A confirmation sheet was drafted from which the actual purchase order was issued and mailed to the vendor. This process was used for regular purchase orders, a one-time purchase of a nonrepetitive item. These purchases amounted to forty percent of Armco's total purchases and resulted in the issuance of approximately fifty-three thousand purchase orders per year. A similar procedure was utilized for blanket purchase orders which covered items purchased over a period of time.

Armco's sole assignment of error claims that:

"The Board of Tax Appeals decision is both unreasonable and unlawful."

In its decision, the BTA stated that the "sales transactions were *made* within the meaning of R.C. Section 5739.01(P) when the vendors received [Armco's] purchase orders *and* confirmed their acceptance of same by telephone." Armco asserts that this is an erroneous interpretation of the evidence.

R.C. 5739.021 provides that a county may levy a tax upon any retail sales made within the county. At all times in question, Butler County did not have a permissive sales tax whereas those counties in which Armco's vendors were located did have a permissive county sales tax. R.C. 5739.01(P), now R.C. 5739.01(O), states that the making of a retail sale "means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to provide a service or to transfer title to or possession of the items sold, but it does not include the delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales, other than the distribution of printed matter which displays or describes and prices the item offered for sale."

For purposes of R.C. 5739.021, only those retail sales whose situs is in a county where the permissive tax is permitted are subject to the tax. *Arga Co.* v. *Limbach* (1988), 36 Ohio St. 3d 220, 522 N.E. 2d 1074.

"The transfer of title to or possession of tangible personal property is a sale and the taxable event on which the tax is imposed. *Where* this occurs is *where* the tax may be imposed. * * *" (Emphasis *sic*.) *Id.* at 222, 522 N.E. 2d at 1077.

In *Diamond Steel Constr. Co., Inc.* v. *Lindley* (Nov. 16, 1982), Mahoning App. No. 81 C.A. 118, unreported, the sales were attributed to the buyer's office location since the evidence disclosed that oral agreement as to the cost, delivery date, and other pertinent facts was struck by the parties by means of a telephone call from the buyer to the seller and documents subsequently executed merely formalized the oral contract.

Sander was the only witness to testify before the BTA. A review of his testimony reveals that Armco's purchases were completed when the buyer

telephoned the vendor to confirm Armco's acceptance of the vendor's offer. There is no evidence that the vendors took any action after Armco telephoned its acceptance other than to ship the requested goods according to the agreed-upon terms. Armco's requests of bids were mere solicitations of offers. The bids constituted offers which Armco accepted via telephone following additional negotiations.

The Tax Commissioner offered no evidence but relied on the proposition that "* * * [t]he Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Hatchadorian* v. *Lindley* (1986), 21 Ohio St. 3d 66, 69, 21 OBR 365, 368, 488 N.E. 2d 145, 148. However, "* * * where the record contains substantial evidence supporting the claim of the * * * [taxpayer], the order of the Tax Commissioner must be supported by something more than a mere presumption in its behalf." *Bloch* v. *Glander* (1949), 151 Ohio St. 381, 390, 39 O.O. 216, 220, 86 N.E. 2d 318, 322.

The proper scope of an appellate court's review of a BTA decision is to determine from the record whether the BTA's decision is unreasonable or unlawful, *i.e.,* supported by any probative evidence. *Monsanto Co.* v. *Lindley* (1978), 56 Ohio St. 2d 59, 10 O.O. 3d 113, 381 N.E. 2d 939. Where there is no such probative evidence, the decision should be reversed as unreasonable and unlawful. *Id.* We conclude that the BTA erred when it found that the parties were bound by the vendors' acceptance of Armco's purchase orders. The contracts were formed, and the parties became obligated, in Butler County when Armco telephoned its acceptance of the vendors' bids. No permissive sales tax was due, because none was levied by Butler County during the audit period. The decision of the BTA is therefore unreasonable and unlawful and is, accordingly, reversed. *Arga Co., supra.*

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed.

It is further ordered that a mandate be sent to the Ohio Board of Tax Appeals for execution of this judgment.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.