JOURNAL ENTRY AND OPINION.
{¶ 1} The appellant, Richard L. Bowen Associates, Inc., appeals the final judgment entry rendered in favor of the appellee, Cuyahoga County Board of Commissioners, upon its motion for summary judgment. For the reasons set forth below, we affirm the decision of the trial court.
 {¶ 2} On or about April 23, 2001, appellee, the Cuyahoga County Board of Commissioners (the "Board"), filed a complaint for declaratory judgment against appellant, Richard L. Bowen Associates Inc. ("Bowen"), seeking an order that the contract for architectural services relative to the construction of a new juvenile detention center was void ab initio. Bowen filed an answer and counterclaim for breach of contract on or about May 7, 2001. The Board filed a motion for summary judgment on July 3, 2001, to which Bowen responded on November 14, 2001. The trial court issued Findings of Fact and Conclusions of Law granting summary judgment in favor of the Board on September 16, 2002.
 {¶ 3} The Board argued in its motion for summary judgment that the contract made between Bowen and the Board in 1996 is void because the Board[1] failed to meet the statutory requirements for engaging "professional design services" under R.C. 153.65 through R.C. 153.71. Bowen was permitted to engage in discovery prior to filing its response to the motion for summary judgment, and several videotaped depositions of past Board members and other officials involved in the original contract were conducted. Written transcripts of all depositions were filed with the trial court prior to that court's decision in this matter.
 {¶ 4} The trial court relied upon the following facts: On or about April 30, 1996, the Board authorized the County Architect to seek qualifications from firms for professional design services relative to the construction of a new juvenile detention center. The Board invited approximately 240 firms to submit Statements of Qualifications for the proposed project, from which it received eleven responses. A Selection Committee was formed by the Board to receive, evaluate and grade the responses. The Selection Committee included the County Architect and other personnel assigned to the project in question.
 {¶ 5} The Committee ranked the top five responses it received in priority from most preferred to least preferred. Bowen ranked fourth out of the five candidates. The Board declined to follow the recommendation of its Selection Committee and decided to enter into negotiations with Bowen, despite its ranking in relation to the other finalists. The Board entered into a contract with Bowen on December 23, 1996; on or about January 25, 2001, Bowen received notice of the Board's intent to terminate their agreement. Bowen has been paid for all services rendered to the Board up to and including that date. Based on our review, these facts are supported by the record presented and are not disputed.
 {¶ 6} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 7} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 8} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 9} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 10} Bowen presents three assignments of error for review. The first and second assignments of error are interrelated and will be addressed together.
 {¶ 11} "I. The trial court improperly resolved disputed issues of material fact, made so-called `findings of fact' that are clearly erroneous, and failed to construe the facts in the light most favorable to appellant."
 {¶ 12} "II. The trial court improperly determined there is no genuine issue of fact regarding the Board's compliance with R.C. 153.69, and that appellee was entitled to judgment as a matter of law thereon."
 {¶ 13} Appellant argues that the trial court's finding that the Board failed to adhere to the statutory requirements imposed by R.C. 153.69
in its award of the professional design services contract to Bowen was erroneous; therefore, appellee was not entitled to judgment as a matter of law. We disagree. R.C. 153.69 provides in pertinent part:
 {¶ 14} "Evaluation and selection of firms; negotiation of contract.
 {¶ 15} "For every professional design services contract, each public authority planning to contract for professional design services shall evaluate the statements of qualifications of professional design firms currently on file, together with those that are submitted by other professional design firms specifically regarding the project, and may hold discussions with individual firms to explore further the firms' statements of qualifications, the scope and nature of the services the firms would provide, and the various technical approaches the firms may take toward the project. Following this evaluation, the public authority shall:
 {¶ 16} "(A) Select and rank no fewer than three firms which it considers to be the most qualified to provide the required professional design services, except when the public authority determines in writing that fewer than three qualified firms are available in which case the public authority shall select and rank those firms;
 {¶ 17} "(B) Negotiate a contract with the firm ranked most qualified to perform the required services at a compensation determined in writing to be fair and reasonable to the public authority * * *;
 {¶ 18} "(D) Upon failure to negotiate a contract with the firm ranked most qualified, the public authority shall inform the firm in writing of the termination of negotiations and enter into negotiations with the firm ranked next most qualified. If negotiations fail, the same procedure shall be followed with each next most qualified firm selected and ranked pursuant to division (A) of this section, in order of ranking, until a contract is negotiated * * *."
 {¶ 19} The trial court found that the Board disregarded these provisions of R.C. 153.69 and arbitrarily chose Bowen as the firm with whom a contract would be negotiated and ultimately executed, instead of engaging in negotiations with the most qualified firm as ranked by the Selection Committee appointed by the Board. In fact, deposition testimony of the County Commissioners involved in the original contract negotiations showed that two of the three Commissioners conducted no independent evaluation, ranking or consideration of the firms in the running for the contract, even though they disregarded the recommendation of their own Selection Committee. The third Commissioner testified that he had independently reviewed the firms' Statements of Qualifications, but would have awarded the contract to the number one ranked firm, as recommended by the Selection Committee.
 {¶ 20} Considering these facts in the light most favorable to the appellant, reasonable minds could only conclude that the Board acted in contravention of the applicable statute when awarding the contract in question to Bowen. We agree with the trial court's finding that the terms of the statute are clear and unambiguous and must be adhered to by public authorities whenever soliciting contracts for professional design services. If the public authority fails to do so, the contract is void. This principle is outlined in Buchanan Bridge Co. v. Campbell (1899),60 Ohio St. 406:
 {¶ 21} "Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes and decided cases, is, that to bind the state, a county or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves. If the contract is executed, no action can be maintained to enforce it, and if executed on one side, no recovery can be had against the party of the other side." Id. at 419.
 {¶ 22} This holding has not been changed nor superceded by Ohio legislation or case law, and we are inclined, in this case, to followBuchanan and its progeny.
 {¶ 23} Those who deal with the County are charged with knowledge of the County's limitations in executing contracts. Kraft ConstructionCo. v. Cuyahoga Cty. Bd. of Commrs. (1998), 128 Ohio App.3d 33 at 45. In that regard, a contractor involved in negotiations with public authorities must "ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril." Ohio Asphalt PavingInc. v. Ohio Dept. of Industrial Relations, et al. (1992),63 Ohio St.3d 512 at 516, quoting Lathrop Co. v. Toledo (1966),5 Ohio St.2d 165, 173.
 {¶ 24} Appellant had the responsibility of determining whether the contract in question was made in accordance with all applicable laws of this State, including R.C. 153.69, and it failed to do so; therefore, the contract between Bowen and the appellee is void and the court is bound to "leave [the parties] where they have placed themselves, and refuse to aid either." Buchanan, 60 Ohio St. 406 at 426. Thus, appellant's first two assignments of error are without merit.
 {¶ 25} Appellant's third assignment of error states:
 {¶ 26} "III. The trial court failed to apply the presumption of regularity to the Board's disposition of its duty to award the contract for architectural services, and improperly determined Commissioners Hagan, Boyle and Weingart engaged in unlawful `pay to play' activity."
 {¶ 27} Appellant's argument that the Board's actions in this matter were entitled to a presumption of regularity, thereby validating the contract, is not well taken. Appellant cites to Wheeling Steel Corp.v. Evatt (1944), 143 Ohio St. 71, as the seminal case regarding the rebuttable presumption assigned to discretionary actions taken by public authorities, but its reliance on this case is misplaced. Wheeling Steel
deals with a taxpayer's appeal of a tax valuation of personal property and affords a presumption of regularity to the tax commission's actions "in the absence of proof to the contrary." Wheeling Steel, 143 Ohio St. 71
at 84, citing 20 American Jurisprudence, 174, Section 170; See, also,Cedar Bay Construction, Inc. v. Freemont (1990), 50 Ohio St.3d 19, Stateex rel. Shafer v. Ohio Turnpike Comm. (1953), 159 Ohio St. 581, 590;Bloch v. Glander (1949), 151 Ohio St. 381, State ex rel. Gerspacher v.Coffinberry (1952), 157 Ohio St. 32.
 {¶ 28} Wheeling Steel and similar cases are easily distinguishable from the instant matter because here there is a controlling statute applicable to the Board's actions. R.C. 153.69 sets forth the specific method by which the Board was to have carried out its public duty when engaging in contract negotiations with firms such as Bowen. Although there is no evidence of malfeasance in the Board's negotiations with Bowen, the failure to adhere to the ranking and negotiation requirements of R.C. 153.69 is a clear violation of statute; thus, there can be no presumption of regularity in the Board's actions. Appellant's third assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., concurs.
ANN DYKE, J., concurs in judgment only.
[1] The appellee in this case is the current Board of County Commissioners, comprised of Jimmy DiMora, Timothy McCormick and Peter Lawson Jones. The Board as it existed at the time the contract in question was initially executed consisted of Timothy Hagan, Lee Weingart and Mary Boyle.