**Ralph W. KETTLEWELL et al., Appellants,**

v.

**HOT–MIX, INC., Appellee.**

**No. 17098.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 27, 1978.

Rehearing Denied June 1, 1978.

---

Law Offices of L. A. Greene, Jr., L. A. Greene, Jr., James R. Doxey, Houston, for appellants.

Baker & Botts, Robert E. Morse, III, Houston, for appellee.

John L. Hill, Atty. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., Troy C. Webb, Chief Environmental Protection Div., Douglas G. Caroom, Asst. Atty. Gen., Environmental Protection Div., W. Thomas Buckle, Asst. Atty. Gen., Environmental Protection Div., Austin, for intervenor-appellee State of Tex.

PEDEN, Justice.

Appellants, who are property owners living nearby, sued Hot-Mix, Inc., to enjoin operation of its recently constructed asphalt plant, alleging that the failure of the Texas Air Control Board (T.A.C.B.) to afford them notice of and opportunity for a hearing before issuing a construction permit to Hot-Mix constituted a violation of the due process provisions of the United States and Texas Constitutions. The plaintiffs did not seek damages. The T.A.C.B., an agency of the State of Texas, intervened as a party defendant to contest plaintiffs' claim that

the permits issued by the Board were invalid.

This case was submitted to the trial court on stipulated facts. The court concluded that 1) the plaintiffs did not exhaust their available administrative remedies, 2) Hot-Mix's conduct here complained of was not performed under color of state law, 3) the plaintiffs were not denied due process, but if they were, Hot-Mix was not responsible for any denial, 4) there is no evidence of nuisance, 5) plaintiffs suffered no actual damages, but if any were suffered, they were neither substantial nor irreparable, and 6) plaintiffs were not entitled to attorney's fees. Plaintiffs' appeal asserts error in each of these conclusions. Both defendants raise cross-points alleging error in the trial court's denial of their pleas to the jurisdiction and of their motions to dismiss the action based on the plaintiffs' lack of standing. We affirm.

Hot-Mix, Inc., began building its asphalt plant on Brittmore Road in Houston after July 23, 1974, pursuant to Construction Permit C–2559 issued by the T.A.C.B. and began operating it on October 23, 1974. No notice was given to any of the plaintiffs of the filing of the application for the construction permit, and none of them acquired actual notice of such filing, nor of any action taken on it before July 23, 1974. They learned of the application only after construction was begun under the permit. Notice was published by the T.A.C.B. on October 9, 1974, stating that a public hearing of the T.A.C.B. would be held on November 13, 1974, to consider the compliance status of the operations of Hot-Mix with Construction Permit C–2559, the Texas Clean Air Act, and the rules and regulations of the Texas Air Control Board at the facility in question. The notice stated that representatives of Hot-Mix were directed to appear and show whether it was in compliance with that permit, Act, and those rules and regulations. The notice stated that information developed at the hearing "may be used" by the executive director of the T.A.C.B. in making any decision regarding the construction permit or the issuance of an operating permit to Hot-Mix. At the hearing all parties were represented by counsel and were given the right to present evidence, cross-examine witnesses, present oral arguments and were allowed additional time to supplement the record with documentary evidence. A record of the proceeding and a report of the examiner were submitted to the T.A.C.B., and on June 20, 1975, it issued an operating permit to the plant. Plaintiffs did not appeal to the district court of Travis County from the granting of either the construction or the operating permits as allowed in § 6.01 of the Texas Clean Air Act, Article 4477–5, Vernon's Texas Civil Statutes.

The parties stipulated that the operation of the Hot-Mix plant has resulted in some particulate emissions including dust that sometimes is visible in the air near the plaintiffs' homes. Noises are noticeable, have occasionally caused plaintiffs' windows and home household items to rattle, and have bothered plaintiffs. Under certain wind conditions several plaintiffs have smelled asphalt odors outside their homes. Plaintiffs have incurred no personal injuries requiring medication or medical care. No repair costs or property damages have been incurred except that some plaintiffs have been required to re-hammer some loose nails.

Points of error 1–6 contend that appellants had a constitutional right to notice and a hearing prior to the issuance of the construction permit. Appellants rely on Article 1, Section 19 of the Texas Constitution and the 14th Amendment to the United States Constitution in arguing that they were deprived of their property without due process of law. Although they did not specifically plead it, appellants assert that their cause of action is based on 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Point number 6 asserts error in the court's conclusion of law that "the conduct of Hot-Mix here complained of was not conduct performed under color of state law." Appellants argue that Hot-Mix was acting under color of state law because Hot-Mix was statutorily required to obtain permits from the T.A.C.B., an agency of the state, prior to constructing and operating the asphalt plant. See Article 4477–5, § 3.27(a) and § 3.28(a), V.T.C.S. We overrule this point.

In *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the United States Supreme Court pointed out that the due process clause of the Fourteenth Amendment applies only to state action, not private action "however discriminatory or wrongful." It held that Pennsylvania's extensive regulation of private utility companies did not make actions of those companies constitute acts attributable to the state for the 14th Amendment or § 1983. The petitioner in that case alleged a denial of due process because the utility company discontinued her electric service without a prior hearing. The Court held that "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." The court further stated that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." We hold that in our case Hot-Mix was not acting as a state agency or under color of state law when it applied to the T.A.C.B. for a construction permit and had no duty to give notice to the plaintiffs. Approval of the construction application by the T.A.C.B., where the Board did not put its weight on the application by ordering the plant to be built, does not convert the application initiated by the company and approved by the Board into State action.

Appellants in our case assert under points of error 1, 2 and 3 that due process was denied them because they were not afforded notice and a hearing prior to the granting of the construction permit. ". . . resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The three factors considered in identifying the specific dictates of due process are 1) the private interest that will be affected by the official action, 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In the case at bar, the private interest affected (over which the T.A.C.B. might have exercised control) was the stipulated fact that the operations of the plant result in "some particulate emissions, including dust, in the plant and near plaintiffs' homes which periodically have settled on plaintiffs' personal property and sometimes have been visually apparent in the air over plaintiffs' land." Also operation of the plant "has, occasionally, under some wind conditions, caused several plaintiffs to smell aromas or odors of asphalt while outside their homes but while in their yards and which bother them." Further, operations contribute to some increase in household cleaning, such as dusting furniture more frequently. As noted, there were no personal injuries requiring medication or medical care and no property damages or repair costs. As to the second factor, the reliability of the existing procedures and the probable value of additional procedural safeguards, the appellants were represented and given a full hearing prior to the issuance of the operating permit. If the hearing had been held

prior to the granting of the construction permit, permission to build the facility might have been denied without giving Hot-Mix the opportunity to demonstrate—at its risk—that the emissions would not be worse than the parties have here stipulated. Under the facts of this case it appears that giving of notice and setting a hearing after construction but before the granting of the operating permit was a reasonable procedure. It adequately protected the appellants' rights to due process while placing on Hot-Mix the risk of building the plant without knowing an operating permit would be issued. The final factor to be considered is the state's interest. If prior to the compliance notice and hearing, a construction notice and hearing had to be provided each time a permit was sought, the additional cost and administrative burdens would, under the facts in this case, appear to be substantial without commensurate benefit. Under the present system, the appellants were given notice and a full hearing without the state bearing the burden of being constitutionally required to give prior notice to everyone who might be affected by the issuance of a permit. Under the facts of this case, we cannot say that as a matter of law due process required this additional safeguard.

■ Points of error 5 and 7 are that the trial court erred in refusing to grant the injunction and in finding that the plaintiffs have suffered no actual damages or, alternatively, that any damages suffered are vague, indefinite and insufficient to sustain injunctive relief, and that the injury, if any, is neither substantial nor irreparable and there is an adequate remedy at law for damages. We overrule these points. The trial court was entitled to make such findings and conclusions from the law and from the stipulations of no personal injuries requiring medication and no repair costs or property damages. "The general rule is that to entitle a petitioner to injunctive relief there must be established an actual and substantial injury or an affirmative prospect thereof." *Protestant Episcopal Church Council v. McKinney,* 339 S.W.2d 400, 403 (Tex.Civ.App.1960, writ ref.).

■ Appellants' point of error 8 attacks the court's finding that there was no evidence of nuisance. In order to find that the operation of a plant is a nuisance, the condition brought about in the use of it must be "1) so unusual and excessive that it necessarily caused injury or damage or harm or inconvenience to the neighbors in the use and enjoyment of their property, substantially, materially, and unreasonably interfering with [their] comfort and proper use and enjoyment of [their] property, taking into consideration the nature and use of the property of both parties and the character of the community in which they are situated; 2) that such condition was substantially offensive, discomforting, and annoying to persons of ordinary sensibilities, tastes, and habits, living in the locality where the premises are situated; 3) to take into consideration the nature and use of the property of both the appellant and the appellee, and the character of the community in which they are situated." *Columbian Carbon Co. v. Tholen,* 199 S.W.2d 825, 829 (Tex. Civ.App.1947, writ ref.). The trial court did not err in concluding that the appellants have not demonstrated that the operation of the plant constituted a nuisance.

■ Point of error 9 is that the trial court erred in holding that the plaintiffs failed to exhaust their available administrative remedies; they contend that the administrative process was complete when they first learned of the state action. We disagree. Stipulated facts 9 and 10 are that appellants learned of the construction of the plant sometime between July 23, 1974 and October 9, 1974. At this time they could have sought a revocation of the construction permit under § 3.27(e) or § 6.01 or the Texas Clean Air Act. The operating permit was not issued until June 20, 1975, and the appellants did not appeal from the granting of that permit.

Appellants cite *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), in arguing that exhaustion of administrative remedies is not a condition precedent to pursuing a civil

rights claim. *McNeese* holds that rights which are inherently federal in nature may be brought in federal court rather than first exhausting state remedies. The question in the case at bar is whether plaintiffs must exhaust prescribed administrative remedies prior to seeking injunctive relief by a collateral attack on an order. If the administrative remedies are adequate, they must. See *Aircraft & Diesel Equip. Corp. v. Hirsch,* 331 U.S. 752, 67 S.Ct. 1493, 1501, 91 L.Ed. 1796 (1947); 6 Texas Practice, Remedies 149, § 113 (1973).

Appellants' tenth point attacks the trial court's conclusion that Hot-Mix complied with all applicable statutes. This conclusion is supported by stipulated facts. More particularly, Hot-Mix applied for and received construction and operating permits. It is stipulated that Hot-Mix complied with the construction permit.

Point 11 challenges the validity of the construction and operating permits because they were signed by the Executive Director by Bill Stewart, Director of Control and Prevention, rather than by a member of the Board. We overrule this point. The T.A.C.B. passed a resolution authorizing the Director of Control and Prevention "to sign his name for or in behalf of and at the direction of, the Executive Director" with respect to permits issued under the Texas Clean Air Act. Section 3.27(g) of the Act allows the Board to delegate its licensing powers and duties (set out in Sections 3.27 and 3.28) to the executive director. Section 3.01 of the Act provides that the Board "has the powers and duties specifically prescribed in this Act and all other powers necessary or convenient to carry out its responsibilities." Further, we consider this point to be an impermissible collateral attack on the validity of the permits issued by the T.A.C.B.

Appellants' final point asserts that the trial judge erred in failing to award an attorney's fee under the Civil Rights Attorney's Fee Act, 42 U.S.C. § 1988. They have been unsuccessful in their suit and are not entitled to be awarded an attorney's fee.

We need not consider the appellees' cross-points.

Affirmed.