**GALVESTON BAY CONSERVATION AND PRESERVATION ASSOCIATION et al., Appellants,**

v.

**TEXAS AIR CONTROL BOARD et al., Appellees.**

No. 12975.

Court of Civil Appeals of Texas, Austin.

Aug. 22, 1979.

Rehearing Denied Sept. 14, 1979.

Clark G. Thompson, Houston, for appellants.

Mark White, Atty. Gen., Jim Mathews, Asst. Atty. Gen., Austin, for Texas Air Control Bd.

Pamela M. Giblin, McGinnis, Lochridge & Kilgore, Austin, for American Hoechst Corp.

PHILLIPS, Chief Justice.

This is a judicial review of an order issued by appellee Texas Air Control Board. Following public hearings held in Harris County, Texas, appellee issued Order 78–2 affirming and modifying the grant of eight Texas Air Control Board construction permits to appellee American Hoechst Corporation by the Executive Director of the Board. Pursuant to Section 6.01 of the Texas Clean Air Act, Tex.Rev.Civ.Stat.Ann. art. 4477–5 (1976), and Section 19 of the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp.1978), appellant Galveston Bay Conservation and Preservation Association, hereafter referred to as GBCPA, sought judicial review of appellees' order in the district court of Travis County, Texas.

A Petition in Intervention on behalf of the City of Shoreacres, City of El Lago, City of Seabrook, City of Taylor Lake Village, City of Kemah, Shoreacres Environmental Committee, El Jardin Property Owners Association, Bay Area Citizens Association, Seabrook Residents Organization, Houston Yacht Club, Rufus G. Smith, and R. A. Wright, was filed by the attorneys for appellants. The trial court granted appellees' motion to strike the Petition in Intervention.

Pursuant to Section 19 of the APA, and Section 6.01 of the Clean Air Act, review of GBCPA's appeal was conducted under the substantial evidence rule whereupon the district court upheld appellee's order and denied appellants all relief. Appellant GBCPA has duly perfected its appeal to this Court.

We affirm this judgment.

On April 25, 1977, American Hoechst Corporation filed an application with the Texas Air Control Board requesting construction permits for styrene monomer and high density polyethylene facilities to be located in the Bayport Industrial Complex, Harris County, Texas. This application was reviewed by the staff of the Board, and on July 1, 1977, permits authorizing construction of the requested facilities were issued by the Executive Director of the Board.

On August 1, 1977, appellant GBCPA gave notice that it was appealing to the Board the decision of the Executive Director granting permits to American Hoechst Corporation. A notice of hearing to consider the appeal by the GBCPA of the permits issued to American Hoechst was issued on September 21, 1977, and was published in at least three newspapers having general circulation within the area of the proposed plant site. That notice of public hearing stated that the hearing record would be used by the Board to determine whether to affirm, modify or reverse the decision of the Executive Director in granting the permit; that the hearing would commence on November 1, 1977; and that a prehearing conference would be set after October 3, 1977. The notice provided that the parties to the hearing would be the staff of the Board, the GBCPA, and American Hoechst Corporation; and that other interested persons could request party status which would be decided at the prehearing conference. Thereafter, on October 3, 1977, Shoreacres Environmental Committee (SEC) requested party status.

At the prehearing conference on October 14, 1977, the hearing examiner for the agency added SEC as a party to the hearing and entered rulings outlining the disputed issues for the hearing and allocating the burden of proof. The disputed issues determined by the examiner were:

(1) Will the proposed facilities comply with all rules and regulations of the Texas Air Control Board?

(2) Will the proposed facilities comply with the intent of the Texas Clean Air Act, including proper consideration of land use?

(3) Will the proposed facilities not prevent the maintenance or attainment of any ambient air quality standard?

(4) Will the proposed facilities not cause significant deterioration of existing ambient air quality in the area?

(5) Will the proposed facilities have provisions for measuring the emission of significant air contaminants?

(6) Will the proposed facilities utilize the best available control technology, with consideration to the technical practicability and economic reasonableness of reducing or eliminating the emissions resulting from the facility?

(7) Will the proposed facilities achieve the performance specified in the application for a permit to construct?

(8) Will the proposed facilities meet, at least, the requirements of any applicable new source performance standards promulgated by the Environmental Protection Agency pursuant to authority granted under Section 111 of the Federal Clean Air Act, as amended?

(9) Will the proposed facilities meet, at least, the requirements of any applicable emission standard for hazardous air pollutants promulgated by the Environmental Protection Agency pursuant to authority granted under Section 112 of the Federal Clean Air Act, as amended?

The examiner's ruling on the burden of proof provided that:

(1) The admission into the record of the permits issued to the company, along with the information and materials on which such issuance was based would establish a *prima facie* case that the permits were validly issued.

(2) Following the admission of the permits and supporting information, the opponents would have the burden of introducing competent evidence tending to show that the requirements for issuance of the permits were not met.

(3) The ultimate burden of persuasion on all issues would rest with American Hoechst Corporation.

An adjudicative hearing before an agency hearing examiner was held commencing November 1, 1977, through November 10, 1977, at which more than fifty hours of testimony were received. All witnesses testified under oath and were subject to cross examination by all parties other than those calling the witness. At the close of testimony all parties made oral arguments of their case to the agency's hearing examiner.

Following the completion of the hearings, the examiner prepared his hearing examiner's report summarizing the record, making findings of fact and conclusions of law, and setting forth his proposal for decision. On December 14, 1977, the hearing examiner's report containing his proposal for decision was mailed to each of the members of the Texas Air Control Board and to each of the parties to the hearing with the statement that all parties had the right to file exceptions and briefs and proposed findings of fact pursuant to Texas Air Control Board Procedural Rule 54.14.

The opponents to the permits, GBCPA and SEC, each filed exceptions and briefs to the hearing examiner's report and proposal for decision. GBCPA's brief also contained proposed findings of fact and proposed conclusions of law. On January 9, 1978, the Board met and considered the hearing examiner's report and proposal for decision as well as the exceptions and briefs filed by the parties. Lengthy oral argument from all parties was heard and considered before the Board decided to postpone decision in the matter until its next meeting in order to allow additional study of the record and consideration of the arguments raised by each of the parties.

At its next scheduled meeting on February 24, 1978, the Board passed Order No. 78–2 which affirmed and modified, by adding additional special provisions to seven of the eight permits. The Board through its order adopted the findings of fact made by its examiner, as set forth in the hearing examiner's report and specifically overruled the findings of fact proposed by GBCPA.

GBCPA and SEC each filed motions for rehearing setting forth the grounds on which they alleged the Board had erred in entering Order No. 78–2. Those motions for rehearing were overruled by the Board.

Appellant GBCPA filed an original petition appealing the decision of the Board in entering Order No. 78–2 in the Travis County district court within thirty days following the overruling of its motion for rehearing. SEC did not appeal the decision of the Board.

By order of the Travis County district court, dated June 6, 1978, GBCPA's appeal was set for hearing before the court on August 16, 1978. Briefs of appellant and appellees were filed with the trial court on August 7, 1978. On August 14, 1978, a Petition in Intervention on behalf of the City of Shoreacres, City of El Lago, City of Seabrook, City of Taylor Lake Village, City of Kemah, Shoreacres Environmental Committee, El Jardin Property Owners Association, Bay Area Citizens Association, Seabrook Residents Organization, Houston Yacht Club, Rufus G. Smith, and R. A. Wright was filed by the attorney for GBCPA. Of the intervenors, only Shoreacres Environmental Committee had participated as a party in the administrative hearing which resulted in Texas Air Control Board Order No. 78–2. On August 16, 1978, the date set for hearing before the district court, appellants sought leave of the trial court to amend its pleadings. Prior to hearing argument on briefs submitted by all parties, the trial court denied appellants' request to amend its pleadings and granted appellee's motion to strike the intervention of the City of Shoreacres, et al.*

The trial court received the record of the administrative hearing into evidence, and the case of appellants and appellees was submitted on oral arguments and briefs. Thereafter, the trial court entered its orders from which appellant has appealed.

### I.

Appellants are before us on a plethora of points which devolve into six main questions. The first is whether the court below correctly concluded that Texas Air Control Board Order No. 78–2 complies with all constitutional and statutory procedural requirements, including those set out in the Texas Administrative Procedure Act.

The statutory requirements in Texas for review and permitting of new sources of air contaminant emissions prior to construction are set forth in Section 3.27 of the Texas Clean Air Act. The pertinent parts of that section with regard to the issues raised in this appeal are:

"(a) Any person who plans to construct any new facility or to engage in the modification of any existing facility which may emit air contaminants into the air of this State shall apply for and obtain a construction permit from the board before any actual work is begun on the facility. The board may exempt certain facilities or types of facilities from the requirements of Section 3.27 and Section 3.28 if it is found upon investigation that such facilities or types of facilities will not make a significant contribution of air contaminants to the atmosphere.

"(b) Along with the application for the permit, the person shall submit copies of all plans and specifications necessary for determining whether the proposed construction will comply with applicable air control standards and the intent of the Texas Clean Air Act, together with any other information which the board considers necessary.

"(c) If, from the information submitted under subsection (b) of this section, the board finds no indication that the proposed facility will contravene the intent of the Texas Clean Air Act, including proper consideration of land use, the board shall grant within a reasonable time a permit to construct or modify the facility. If the board finds that the emissions from the proposed facility will contravene these standards or will contravene the intent of the Texas Clean Air Act, it shall not grant the permit and shall set out in a report to the applicant its specific objections to the submitted plans of the proposed facility.

\* \* \* \* \* \*

"(g) The powers and duties set out in Section 3.27 and Section 3.28 may be delegated by the board to the executive director. The applicant may appeal to the

board any decision made by the executive director under these sections."

Appellees maintain that appellants have been afforded a full right of appeal from the contested case hearing at which they were allowed to fully develop their case. The result was entry of Board Order No. 78-2 affirming and modifying the permits previously granted by the Executive Director.

■ Appellants maintain that the allocation of burden of proof in the hearing was improper, thereby resulting in a hearing of form, not substance. We cannot agree. Without passing on the examiner's allocation of the burden of proof, outlined above, it is apparent from this record that the moving party, appellee American Hoechst Corporation, presented a full and complete record of evidence necessary to uphold its position on each and every issue and in upholding its position, it also upholds the order of the Commission. We also hold that the order is supported by substantial evidence.

Suffice it to say, whatever the examiner's ruling on this burden, it did not relieve the applicant of the ultimate burden of persuasion on all issues, but rather, created a rebuttable presumption that its burden was met if the permit granted by the Executive Director and the materials which he relied upon were introduced into evidence. This presumption did not have the quality of affirmative evidence. Consequently, once evidence was introduced to rebut the presumption, it vanished and the case was decided *de novo* upon the basis of evidence in the record. Thus, the granting of the permit by the Executive Director under Section 3.27(g) of the Act, a matter entrusted to him in his official capacity, is valid under the facts of this case.

Appellants were given every opportunity to rebut the evidence in support of the permit, they took full advantage of this opportunity and failed.

■ Nor are we impressed with appellants' contention that the order in question fails to follow the requirements of the APA in stating its reasons for its various conclusions. The Commission's ultimate findings are well explained by the order and are in accord with Section 16 of the APA. These findings are a clear and explicit statement of the underlying facts which allow the parties and this Court to trace the path of the Board in its decision making.[1] They support the conclusion that the proposed facilities will not violate the intent of the Texas Clean Air Act, including proper consideration of land use, nor exceed the applicable air control standards.

■ The instant case is governed by the substantial evidence rule pursuant to Section 19(e) of the APA and Section 6.01 of the Texas Clean Air Act. Consequently, the trial court was correct in making no findings of fact since only questions of law were presented to it on appeal. *Wylie Independent School District v. Central Education Agency*, 488 S.W.2d 166 (Tex.Civ.App. 1972, writ ref'd n. r. e.).

II.

We next turn to the question of whether the trial court was correct in its conclusion that the order in question was authorized, legal and valid under the provisions of the Texas Clean Air Act and rules and regulations of the Texas Air Control Board.

■ Appellants complain that the permits were not signed by the Executive Director of the Board or by the Board, but were issued under the authority of the Executive Director by the Deputy Director of Control and Prevention. We overrule this point by authority of *Kettlewell v. Hot-Mix, Inc.*, 566 S.W.2d 663 (Tex.Civ.App.1978, no writ).

Appellants further assert that the trial court erred when it concluded that Section 3.13 of the Texas Clean Air Act applies to existing sources of air contaminants rather

---

1. See *Imperial American Resources Fund v. Railroad Commission of Texas*, 557 S.W.2d 280 (Tex.1977).

than future sources seeking construction permits, and that the order of the Board was invalid because the Board failed to file findings of fact required by Section 3.13 of the Act.

 The trial court held, and we agree, that Section 3.13 applies to existing sources of air contaminants rather than to future sources seeking construction permits under Section 3.27 of the Act. Section 3.13 refers specifically to "emissions being made." Any ultimate fact questions which the Board must determine when ruling upon a construction permit application are set forth in Section 3.27 of the Act. We hold that the Board's findings of fact are adequate to support its decision under the appropriate section, 3.27.

### III.

 We turn now to the question of whether the Board's order was supported by substantial evidence.

The main thrust of appellants' case is to argue highly technical and abstruse questions and to regale this Court with instance after instance in which the Board made the wrong decision with respect to its rulings on air concentrations of benzene, styrene and sulphur dioxide. If there were no substantial evidence rules up to this point in time, then this is the case that would have produced it. To ask a court of law, under the facts before us, to order the Board to reverse, modify or reconsider these technical questions would be ludicrous. This Court's sole province is to ascertain whether these is any evidence to uphold the Board's order, with which a reasonable person could agree there is an abundance.

Mr. Sam Crowther, a professional engineer with the Permits Division of the Texas Air Control Board staff, testified extensively about his review of the proposed facilities. Crowther has a degree in Chemical Engineering from the University of Texas and for fifteen years worked as a process engineer for a large company situated on the Houston Ship Channel. He has been an engineer with the Texas Air Control Board for over five years.

Mr. Crowther testified that as part of Texas Air Control Board's standard procedure, when appellee American Hoechst permit applications were received, he was to relay this information to the various divisions of the Texas Air Control Board staff and to local air control programs so that a comprehensive review could be conducted by people with expertise in specialized areas such as health effects and air quality analysis. The written comments of these other experts were included in the agency's evaluation of the permit application in question.

Mr. Crowther testified that he personally reviewed the data and information submitted by the applicant in support of the permit and that he found it complete and accurate. Mr. Crowther then went on to explain how he tested the various pollutants by using techniques that have been perfected over a number of years. This method is used to predict impacts of the emissions upon the environment before the facility is built. He went on to note that this type of experiment tends to predict a higher value than is later found when emissions are actually measured after a plant is built. This would have the effect of building in a margin of safety for emission levels predicted by a model.

Every permit unit is required to meet all of the rules and regulations of the Texas Air Control Board governing various pollutants and operations. After summarizing these regulations, Mr. Crowther stated unequivocally that it was his determination that the facilities would meet all of the rules and regulations of the Board. He went on to testify that "this particular facility is the best one I have worked on in the time that I have been working permits with the Air Control Board."

Mr. Crowther explained that while he evaluated all proposed emissions from the plant, he gave closer scrutiny to the emissions of benzene and styrene, since these compounds can be toxicologically significant.

Mr. James Price, who is in charge of the health effects review for the Texas Air

Control Board staff, also testified. He has a Master of Science degree in biochemistry from the University of Texas with primary emphasis on the effect of chemicals on genes and on the regulation of cells in higher orders. Price testified that in his review of literature in this field, he had never seen any indication of demonstrated health effects at the concentrations projected. This testimony was confirmed by Carroll Christian Jones, M.D., a witness for the appellants.

Detailed testimony by Mr. Crowthers with respect to land use and the emissions impact on the land and the use of the land around the facility was given. Without further explanation here of the methods used in these tests, it is sufficient to say that the emissions from the proposed facility are consistent with the use of the land in that area for the purpose of production of ethylbenzene, styrene and high density polyethylene, and that the impact on the air quality will not be significant.

We note that appellee American Hoechst's plant facilities lie within the industrial district created by the cities of Seabrook and Pasadena. This local industrial districting is additional strong evidence of the propriety of the American Hoechst plant at the site for which the permits were issued and that the Texas Air Control Board was correct in determining that the facilities would comply with the intent of the Texas Clean Air Act, including proper consideration of land use.

The record is replete with evidence that there would be no adverse air quality impact on surrounding areas as a result of the proposed facilities.

We also hold that this record contains ample evidence to uphold the Board's findings with respect to the remaining criteria contained in the examiner's list of disputed issues, described above, and that it would unduly lengthen this opinion to restate that evidence here.

## IV.

We also hold that the trial court was correct in refusing to permit appellant to amend its original petition on the merits on the date of the hearing.

Appellant argues that it should have been allowed to amend its pleadings on the day set for the hearing on the merits before the court. This contention is based upon the argument that there was no trial before the district court. This contention fails since the court properly employed the only procedure required by the APA in the review of the administrative agency decision. See Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19 (Supp.1978). Also, under Tex.R. Civ.P. 63, the decision to allow amendment of pleadings within seven days of trial is within the sound discretion of the trial court, and unless it clearly appears that such discretion has been abused, its order permitting or refusing a trial amendment will not be disturbed. *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605 (1948); *State v. Beever Farms, Inc.*, 549 S.W.2d 223 (Tex.Civ.App.1977, writ ref'd n. r. e.). We cannot say that appellees were not surprised by the attempted addition of new material issues. Appellants have failed to carry their burden of showing that the trial court abused its discretion.

We now come to the question of whether the trial court correctly struck intervenors' petition in intervention where the proposed intervenors had not participated in the administrative agency proceeding and had not complied with the requirements of the APA for appealing an agency order.

The question of whether someone will be permitted to intervene in a suit is subject to wide discretion by the trial court. *Delley v. Unknown Stockholders of Brotherly and Sisterly Club of Christ, Inc.*, 509 S.W.2d 709 (Tex.Civ.App.1974, writ ref'd n. r. e.); *DeCato v. Krebs Construction, Inc.*, 410 S.W.2d 806 (Tex.Civ.App.1966, writ ref'd n. r. e.).

In the instant case, several entities filed a petition in intervention two days prior to the court's hearing on the merits of the appeal. On motion by appellees, the court struck the intervention. The court's

action was correct for several reasons. To name one, in order to intervene in an action, a party's interest must be such that he would be entitled to recover in his own name. *Wilson v. County of Calhoun*, 489 S.W.2d 393 (Tex.Civ.App.1972, writ ref'd n. r. e.); *Mulcahy v. Houston Steel Drum Co.*, 402 S.W.2d 817 (Tex.Civ.App.1966, no writ). Intervenors were not proper parties to the administrative agency appeal.

None of the intervenors, except the Shoreacres Environmental Committee, were parties to the administrative agency proceedings that gave rise to this appeal. They filed no motion for rehearing which is a prerequisite to appeal pursuant to the APA. *Texas State Board of Pharmacy v. Kittman*, 550 S.W.2d 104 (Tex.Civ.App.1977, no writ). They are therefore precluded from appealing the Board's decision at this time.

The Shoreacres Environmental Committee was a party to the hearing and filed a motion for rehearing but did not file an appeal within thirty days after the motion for rehearing was overruled, as required by Section 19(b) of the APA.

Consequently, all proposed intervenors failed to comply with the appeal requirements set out in the APA. Since they could not bring this action on their own, the court properly refused to allow them to intervene in the appeal filed by the appellants.

■ Finally, we hold that the trial court was correct in not enjoining appellee American Hoechst Corporation from continuing construction of the proposed facilities at the proposed plant site, since appellant did not seek an injunction in the trial court.

Texas R.Civ.P. 682 requires that no writ of injunction shall be granted unless the applicant therefore shall present his petition to the judge, verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief. Appellants' original petition neither alleges facts in support of injunctive relief nor prays for such relief. See this Court's opinion in *Fant v. Massie*, 451 S.W.2d 774 (Tex.Civ. App.1970, writ ref'd n. r. e.).

The judgment of the trial court is in all things affirmed.

SHANNON, Justice, concurring.

I concur in the affirmance of the judgment.

I do not agree, as the majority apparently does, with the district court's implicit conclusion that the hearing examiner correctly determined the burden of going forward with the evidence in the hearing before the Texas Air Control Board.

American Hoechst Corporation applied to the Board for construction permits for chemical facilities to be located in an industrial complex near Pasadena. Pursuant to authority delegated by the Board, the Executive Director issued the permits.

Within the time allowed by Board Rule 56.1, appellants perfected an intra-agency appeal of the Executive Director's action to the Board. At a prehearing conference the hearing officer made the complained of rulings pertaining to the burden of going forward with the evidence. Those rulings were:

(1) The admission into the record of the permits issued to the company by the Executive Director, along with the accompanying data would establish "a *prima facie* case that the permits were validly issued."

(2) Following the admission of the permits and supporting information, the opponents will have the burden of introducing competent evidence tending to show that the requirements for issuance of the permits were not met; and

(3) The ultimate burden of persuasion on all issues will rest with American Hoechst Corporation.

Under the hearing officer's ruling, after the permit and supporting data had been introduced, the applicant could rest and the protestants then would have the onerous burden of disproving the self-serving statements usually found in the data submitted with an application for a permit.

There is nothing in the Texas Clean Air Act, Tex.Rev.Civ.Stat.Ann. art. 4477–5 (1976) or the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp.1978), that authorizes the examiner's ruling. The general view is contrary to that ruling. In an intra-agency appeal, an order carries no presumption of validity. *Bloch v. Glander*, 151 Ohio St. 381, 86 N.E.2d 318 (1949); 2 Am.Jur.2d Administrative Law § 548 (1962). Such a presumption obtains only in appeals from administrative agencies to courts.

In an intra-agency appeal to the Board the applicant has the burden of going forward and of proving by competent evidence its case for a permit. The permit and supporting data, without other proof, are not sufficient to support an order of the Board affirming the action of the Executive Director. Stated another way, if the applicant in such an appeal introduced into evidence the permits granted by the Executive Director and the supporting documents and then closed without placing competent evidence in the record in support of every element necessary to obtain the permit, the Board should enter an order for the protestants. These observations are particularly appropriate in this instance inasmuch as the Executive Director entered his order granting the permits without a hearing.

Although the examiner's ruling as to the burden of going forward with the evidence was incorrect, I agree that appellants have failed to demonstrate that the error resulted in the entry of an improper order.