DECISION
{¶ 1} This case is before this court after this court's decision in State ex rel. Rock v. School Emp. Retirement Bd.
(Dec. 27, 2001), Franklin App. No. 99AP-1474 (Memorandum Decision) was reversed by State ex rel. Rock v. School Emp.Retirement Bd., 96 Ohio St.3d 206, 2002-Ohio-3957, and the cause remanded "for a consideration of the merits of Rock's mandamus action." Id. at ¶ 11.
 {¶ 2} On January 24, 1997, relator, Jacalyn A. Rock, who was a school bus driver for the Parma City School District, injured her right knee when she slipped on ice. In March 1998, Rock applied for disability retirement benefits from respondent School Employees Retirement System ("SERS"). On July 31, 1998, the SERS board ("board") denied Rock's application for disability retirement. Thereafter, Rock unsuccessfully requested the board to reconsider its decision.
 {¶ 3} On December 22, 1999, Rock filed a complaint in mandamus in this court to compel the board to vacate its decision and to grant disability retirement benefits to Rock. Alternatively, Rock sought an order to compel the board to vacate its decision and to grant Rock a personal appearance before the board.
 {¶ 4} Pursuant to Civ.R. 53(C)[1] and Loc.R. 12(M)[2] of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. On May 31, 2000, after having examined the evidence, the magistrate issued a decision, wherein she made findings of fact and conclusions of law. In her decision, the magistrate recommended that a writ of mandamus should lie: (1) ordering respondent to vacate its decision that denied relator's request for disability retirement benefits; and (2) ordering respondent to issue a new decision within which the board identifies what medical evidence it relied upon in reaching its new decision.
 {¶ 5} Thereafter, the board objected to the magistrate's decision. On December 26, 2000, this court sustained the board's objections to the magistrate's decision and ordered the cause to be returned to the magistrate for a determination on the merits.State ex rel. Rock v. School Emp. Retirement Bd. (Dec. 26, 2000), Franklin App. No. 99AP-1474 (Memorandum Decision). On February 9, 2001, Rock appealed to the Supreme Court of Ohio.
 {¶ 6} Subsequently, on February 14, 2001, during the pendency of the appeal to the Supreme Court, the magistrate issued another decision, wherein she recommended that this court deny relator's request for a writ of mandamus.[3] In March 2001, Rock objected to the magistrate's decision of February 2001, and the board filed a memorandum in opposition to Rock's objections. On April 10, 2001, Rock moved for an extension of time to file a reply to the board's memorandum in opposition. By journal entry filed April 12, 2001, this court found it was unable to rule upon Rock's motion for an extension of time to file a reply due to an "ostensible lack of jurisdiction." On April 16, 2001, Rock again moved for an extension of time to file a reply to the board's memorandum in opposition. By journal entry filed April 20, 2001, this court again denied Rock's motion of April 16, 2001.
 {¶ 7} On April 17, 2001, the Supreme Court of Ohio sua sponte dismissed Rock's appeal of February 9, 2001, for want of prosecution. State ex rel. Rock v. School Emp. Retirement Bd.
(2001), 91 Ohio St.3d 1498.
 {¶ 8} On December 27, 2001, this court dismissed Rock's mandamus action for lack of jurisdiction. From this judgment, Rock appealed to the Supreme Court of Ohio. The Supreme Court reversed this court's judgment and remanded the cause for a consideration of the merits of Rock's mandamus action. Rock,
2002-Ohio-3937, at ¶ 11.
 {¶ 9} A determination of whether a member of SERS is entitled to disability retirement is solely within its province, pursuant to R.C. 3309.39. State ex rel. McMaster v. School Emp.Retirement Sys. (1994), 69 Ohio St.3d 130, 133, citing Fair v.School Emp. Retirement Sys. (1978), 53 Ohio St.2d 118, syllabus. "[T]o be entitled to disability retirement benefits, a member must be mentally or physically incapacitated for the performance of such member's last assigned primary duty by a disabling condition either permanent or presumed to be permanent for twelve continuous months following the filing of an application."McMaster, at 133. See, generally, R.C. 3309.39(C). SERS' determination of a member's entitlement to disability retirement benefits "is subject to review by mandamus, and mandamus may also be utilized to correct any other abuse of discretion in the proceedings." McMaster, at 133, citing Carney v. School Emp.Retirement Sys. Bd. (1987), 39 Ohio App.3d 71, 72. "In the mandamus context, an abuse of discretion occurs when a decision is `to an end or purpose not justified by, and clearly against, reason and evidence.'" State ex rel. Bryant v. Kent City SchoolDist. Bd. of Edn. (1991), 71 Ohio App.3d 748, 752, quotingState ex rel. Democratic Executive Commt. v. Brown (1974),39 Ohio St.2d 157, 161. See, also, McMaster, at 133, citing Rockv. Cabral (1993), 67 Ohio St.3d 108, 112 (stating that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable").
 {¶ 10} "[T]o be entitled to a writ of mandamus, a relator must establish that: (1) relator has a clear legal right to the relief prayed for, (2) respondent is under a clear legal duty to perform the act, and (3) relator has no plain and adequate remedy in the ordinary course of law." McMaster, at 133, citing Stateex rel. Manson v. Morris (1993), 66 Ohio St.3d 440, 441.
 {¶ 11} At the outset, relator suggests the board had insufficient information concerning relator's job duties when it denied relator's application for disability retirement. We observe, however, that it was relator herself who provided the board with a description of her job duties. (Stipulated Evidence, Exhibit 127.) Accordingly, for relator to now claim that this information is insufficient is unpersuasive.
 {¶ 12} In her objections, relator contends that the magistrate was incorrect when she concluded that "[s]ince SERB does not have to provide an explanation for its determinations, one must assume that SERB has properly discharged its duties and responsibilities under the law. As such, relator has not established that SERB abused its discretion in this regard." (Magistrate's Decision, filed September 2, 2004, at ¶ 59, attached as Appendix A.)
 {¶ 13} "The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public authorities, within the limits of the jurisdiction conferred upon them by law, will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully. All legal intendments are in favor of the regularity of administrative action." State ex rel. Speeth v. Carney (1955),163 Ohio St. 159, 186. See, also, State ex rel. Shafer v. Ohio TurnpikeComm. (1953), 159 Ohio St. 581, 590; Bloch v. Glander (1949),151 Ohio St. 381, 385-386. See, also, Withrow v. Larkin (1975),421 U.S. 35, 47, 95 S.Ct. 1456.
 {¶ 14} Here, notwithstanding relator's contention to the contrary, we find the evidence does not support a finding that the board failed to properly discharge its duties and responsibilities under the law. We therefore conclude relator has failed to carry her burden of persuasion to rebut a presumption in favor of the regularity of SERS' administrative action. Accordingly, relator's contention that the magistrate erred when she assumed the board properly discharged its duties is not well-taken.
 {¶ 15} In her objections, relator also contends that she was deprived procedural due process because: (1) she was not provided with an evidentiary hearing before the board, and (2) the board denied her request for a personal appearance. Although relator failed to raise this issue before the magistrate, we consider it here.
 {¶ 16} "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." Bd. of Regents of State Collegesv. Roth (1972), 408 U.S. 564, 569-570, 92 S.Ct. 2701. (Footnote omitted.) See, also, Am. Mfrs. Mut. Ins. Co. v. Sullivan
(1999), 526 U.S. 40, 59, 119 S.Ct. 977 (stating that "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in `property' or `liberty.' * * * Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process").
 {¶ 17} "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." Roth, supra, at 577.
 {¶ 18} The Roth Court further explained that "[p]roperty interests * * * are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.
 {¶ 19} Here, for purposes of our analysis, we assume relator has a protected property interest and, therefore, the requirements of procedural due process apply.
 {¶ 20} "Procedural due process requirements are flexible and vary according to a particular situation." State v. Pennington
(Jan. 29, 2002), Franklin App. No. 01AP-657, appeal not allowed,95 Ohio St.3d 1460. See, also, Mathews v. Eldridge (1976),424 U.S. 319, 334, 96 S.Ct. 893 (stating that "`[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' * * * `[D]ue process is flexible and calls for such procedural protections as the particular situation demands'"); Walker v.State Med. Bd. of Ohio (Feb. 21, 2002), Franklin App. No. 01AP-791, citing Sorrell v. Thevenir (1994), 69 Ohio St.3d 415,422 (stating that "Ohio's Due Course Clause in Section 16, Article I, Ohio Constitution is equivalent to the Due Process Clause of the Fourteenth Amendment").
 {¶ 21} Former R.C. 3309.39[4] provided the procedure that applied to relator when she sought disability benefits in March 1998. See, also, former Ohio Adm. Code 3309-1-41[5]
(denial of disability benefits and appeals procedure). According to our review of these former statutory and administrative provisions, we find no provisions that were applicable at the time of relator's application for disability retirement benefits that required an evidentiary hearing before the board at the time a member applied for disability retirement benefits.
 {¶ 22} Furthermore, to the extent relator contends that provisions of R.C. Chapter 119 concerning adjudications are applicable or that the board's denial of relator's application must be supported by reliable, probative, and substantial evidence, see, e.g., R.C. 119.12, we find such contentions are not persuasive. See Fair v. School Emp. Retirement Sys. of Ohio
(1975), 44 Ohio App.2d 115, 117 (finding there is no statutory provision making R.C. Chapter 119 applicable to orders or adjudications by SERS).
 {¶ 23} Former Ohio Adm. Code 3309-1-41(B)(4) provided:
The individual shall have the right to request, as part of the appeal, a personal appearance before the retirement board's retirement committee with counsel and/or a personal physician. * * * A personal appearance will not be granted unless "additional objective medical evidence" as defined in paragraph (B)(3) of this rule is received by the retirement board within ninety days from the date on the notice of denial or termination. * * *
 {¶ 24} According to former Ohio Adm. Code 3309-1-41(B)(3), "additional objective medical evidence" was defined as "current medical evidence documented by a licensed physician specially trained in the field of medicine pertinent to the illness or injury for which disability is claimed, and such evidence itself has not, heretofore, been submitted, and such evidence does not merely contain or reiterate findings of information contained in documents or evidence previously submitted. All medical evidence submitted shall be reviewed by a member of the medical advisory committee who shall advise as to its status as `additional objective medical evidence.'"
 {¶ 25} In correspondence to relator dated December 18, 1998, SERS denied relator's appeal for reconsideration because "[a]dditional objective medical evidence in support of your application was not established." (See, also, letter dated December 11, 1998, from Edwin H. Season, M.D., chairman of medical advisory committee, wherein Dr. Season informed the board that relator's submissions did not constitute additional objective medical evidence.)
 {¶ 26} Relator contends, however, that she did provide "additional objective medical evidence" in support of her application and, therefore, SERS erred by not granting her an opportunity to personally appear before the board.
 {¶ 27} To the extent that relator relies upon documentation by Janeane Regan, Ph.D., such reliance is unavailing. Dr. Regan is a psychologist, not a physician. Under former Ohio Adm. Code3309-1-41(B)(3), "additional objective medical evidence" was defined as "current medical evidence documented by a licensedphysician specially trained in the field of medicine pertinent to the illness or injury for which disability is claimed[.]" (Emphasis added.) See, also, McMaster, supra, at 136; Copelandv. School Emp. Retirement Sys. (Aug. 5, 1999), Franklin App. No. 98AP-1173 (Tyack, J., dissenting), cause dismissed (2000),88 Ohio St.3d 1507.
 {¶ 28} Furthermore, according to letters from disinterested physicians who were appointed by SERS and who evaluated relator, relator's additional medical information did not alter these physicians' earlier impressions that relator's condition did not form a basis for disability retirement.[6] Moreover, based upon our independent review, we find relator's additional medical information appears to merely reiterate information that previously was submitted. See former Ohio Adm. Code3309-1-41(B)(3) (providing that to be considered "additional objective medical evidence," "such evidence itself has not, heretofore, been submitted, and such evidence does not merely contain or reiterate findings of information contained in documents or evidence previously submitted").
 {¶ 29} Therefore, under these circumstances, we cannot conclude that the board abused its discretion when it concluded that additional objective medical evidence in support of relator's application was not established. (Letter dated December 18, 1998, from SERS to relator.)
 {¶ 30} Accordingly, even assuming relator has a protected property interest, we are not persuaded by relator's claim that she was deprived of procedural due process.
 {¶ 31} In her objections, relator also contends that Claire V. Wolfe, M.D., a physician who was retained by the board, was not competent and that Dr. Wolfe's report was not competent evidence because it did not adequately address the issue of relator's fibromyalgia. Therefore, relator asserts the board erred by relying upon Dr. Wolfe's report. We disagree.
 {¶ 32} Relator provides no evidence in support of her assertion that Dr. Wolfe was incompetent. Moreover, based upon our independent review, we find no evidence to support such a claim.
 {¶ 33} Additionally, we are not persuaded by relator's assertion that Dr. Wolfe in her report failed to adequately address the issue of relator's fibromyalgia and, therefore, her report was not competent evidence. In her report, Dr. Wolfe discussed relator's medical history and the results of Dr. Wolfe's physical examination. Dr. Wolfe stated that relator "may well have fibromyalgia. However, she far exceeds that diagnosis and probably falls in the category of somatoform disorder." (Report of Dr. Wolfe, dated May 7, 1998.) Dr. Wolfe also stated that "I do not find any objective organic abnormalities that should preclude Jacalyn Rock from driving a school bus or doing anything else. * * * I don't find anything today neurologically or musculoskeletally to preclude her [Rock] returning to work. Id.[7] (See, also, letter dated November 23, 1998, from Dr. Wolfe to SERS [wherein Dr. Wolfe stated that she reviewed the additional information and would not change her impression from the May 1998 examination].)
 {¶ 34} Moreover, because the board had no duty to rely exclusively on the findings of relator's treating physician with respect to the issue of fibromyalgia, see State ex rel. Schwabenv. School Emp. Retirement Sys. (1996), 76 Ohio St.3d 280, 282, relator's suggestion that the board erred by giving weight to Dr. Wolfe's findings is not persuasive.
 {¶ 35} Accordingly, following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the relevant law to them. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Lazarus, P.J., and Bowman, J., concur.
APPENDIX A
IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jacalyn A. Rock,: Relator, : v. : No. 99AP-1474 School Employees Retirement Board, : (REGULAR CALENDAR) Respondent. :
 MAGISTRATE'S DECISION Rendered on September 2, 2004 Janice L. Mazurkiewcz, for relator.
Jim Petro, Attorney General, for respondent.
 IN MANDAMUS {¶ 36} Relator, Jacalyn A. Rock, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, School Employees Retirement Board ("SERB"), to vacate its decision denying her application for disability retirement benefits and to find that she is entitled to said benefits.
 {¶ 37} Findings of Fact:
 {¶ 38} 1. Relator was employed as a school bus driver with the Parma School District for approximately six years. During that time, relator sustained certain injuries.
 {¶ 39} 2. In March 1998, relator filed a disability retirement application form and job duty form with SERB requesting disability retirement benefits.
 {¶ 40} 3. Relator submitted support from four different physicians. Three of those doctors certified that relator had been physically and/or mentally incapacitated for a period of at least twelve months and was unable to perform her duties as a school employee.
 {¶ 41} 4. Relator was referred to and examined by three doctors on behalf of SERB. Each of those doctors submitted reports and certified that relator had not been physically and/or mentally incapacitated for a period of time of at least twelve months and that she is able to perform her duties as a school employee.
 {¶ 42} 5. On July 27, 1998, the Medical Advisory Committee of SERB recommended that relator's disability retirement application be denied.
 {¶ 43} 6. By letter dated August 3, 1998, relator was informed that her disability was to be denied as follows:
The Medical Advisory Committee has reviewed the reports and recommendations of the physician(s) who examined you for the Retirement Board. Based upon all of the available medical evidence, the Committee has recommended to the Retirement Board that your disability retirement application be denied.
On July 31, 1998, the Retirement Board agreed with the recommendations of the Medical Advisory Committee and disapproved your application.
If you intend to appeal the Board's decision it must be in writing, signed by you, and sent within 15 days of the date on this letter. Please follow the instructions in the enclosed leaflet regarding School Employees Retirement System's disability appeals procedures.
 {¶ 44} 7. Relator appealed the denial for disability and, by letter dated December 18, 1998, relator was informed that her appeal for reconsideration was denied as follows:
This letter is in reference to the appeal for reconsideration of your disability retirement.
All of the submitted medical evidence has been reviewed. Additional objective medical evidence in support of your application was not established. Your request for a personal appearance was denied. On December 18, 1998, the Retirement Board upheld their original recommendation to deny your disability retirement. All appeal rights have ceased.
 {¶ 45} 8. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 46} 9. On May 31, 2000, this magistrate issued a magistrate's decision concluding that the court should grant a writ of mandamus ordering respondent SERB to vacate its decision denying relator's disability retirement and issue a new decision granting or denying the benefits after identifying what medical evidence SERB had relied upon and providing the reasoning for its decision.
 {¶ 47} 10. Thereafter, on December 26, 2000, this court issued a memorandum decision sustaining objections filed to the magistrate's decision and remanding the matter back for determination on the merits.
 {¶ 48} 11. On remand, this magistrate has reviewed the record and will make more findings of fact.
 {¶ 49} 12. Relator was examined by Jerold H. Altman, M.D., on June 19, 1998, for her conditions of dysthymia and posttraumatic stress disorder ("PTSD"). Dr. Altman concluded in his report as follows:
I find no evidence of a disruptive psychiatric disorder. Certainly, nothing that would interfere with functioning. Any consideration for disability should be based on physical considerations.
 {¶ 50} According to Dr. Altman, as a result of his examination, relator is not mentally incapacitated for a period of at least twelve months and is able to perform her duties as a school employee.
 {¶ 51} 13. Relator was examined by Claire V. Wolfe, M.D., who issued a report dated May 7, 1998. Dr. Wolfe examined relator with regard to her conditions of fibromyalgia and chronic pain and concluded as follows:
I do not find any objective organic abnormalities that should preclude Jacalyn Rock from driving a school bus or doing anything else. Her knee arthroscopy apparently found a loose body; however, she did not get any better with surgery suggesting that some of the knee symptoms were probably myofascial to start with. She's had a normal MRI otherwise of the knee. She has had normal MRIs and CT scans of pretty much everything; she's had a normal electrodiagnostic study. Her symptoms and signs are not anatomic for any organic neurologic or musculoskeletal condition. She may well have fibromyalgia. However, she far exceeds that diagnosis and probably falls in the category of somatoform disorder.
I don't find anything today neurologically or musculoskeletally to preclude her returning to work. However, psychologically, I would be concerned that she and whoever was on the school bus with her might be at significant risk. Psychiatric evaluation by a psychiatrist comfortable with somatoform disorders might be appropriate.
 {¶ 52} 14. Relator was also examined by Michael D. Brogan, M.D., who issued a report dated May 7, 1998. Dr. Brogan examined relator with regards to her condition of irritable bowel syndrome. Dr. Brogan concluded as follows:
1. I do feel that this patient's evaluation and therapy has been appropriate. I gave her some recommendations regarding a lactose-free, irritable-bowel-syndrome diet, but otherwise have no recommendations regarding diagnostic testing or therapy.
2. I do not feel that this patient's gastrointestinal symptoms comprise a basis for disability since she is eating, gaining weight, and experiencing only some intermittent symptomatology.
 {¶ 53} Dr. Brogan opined that relator was not physically incapacitated for a period of at least twelve months and that she is able to perform her duties as a school employee.
 {¶ 54} 15. Relator did submit medical evidence from her treating physicians with regard to the severity of her problem which included their opinions that she is physically and/or mentally incapacitated for a period of at least twelve months and that she is unable to perform her duties as a school employee.
 {¶ 55} 16. As stated previously, SERB denied relator's application for disability.
 {¶ 56} Conclusions of Law:
 {¶ 57} The Ohio Supreme Court has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 58} Pursuant to R.C. 3309.39, the determination of whether a member of SERB is entitled to disability retirement benefits is solely within the province of the retirement board. State exrel. McMaster v. School Emp. Retirement Sys. (1994),69 Ohio St.3d 130. However, a determination by the retirement board that an applicant is not entitled to disability retirement benefits is subject to review by mandamus, which may also be utilized to correct any other abuse of discretion in the proceedings. Id.
 {¶ 59} In her brief, relator challenges the evidence relied upon by SERB in denying her application for disability retirement. Relator notes that, according to Ohio Adm. Code3309-1-40(A)(1), the employee's disabling condition must incapacitate her from performing her last assigned primary duty as an employee. Relator contends that both the doctors upon whom SERB relied, and SERB, did not properly take into account all of her job duties in rendering their opinions that she could perform her former job and that she was not entitled to disability retirement. Upon review of the record, there is no way to evaluate whether or not SERB properly took relator's prior job duties into consideration in rendering the decision that she was not entitled to disability retirement benefits. Since SERB does not have to provide an explanation for its determinations, one must assume that SERB has properly discharged its duties and responsibilities under the law. As such, relator has not established that SERB abused its discretion in this regard.
 {¶ 60} Relator also challenges the medical evidence. She contends that Dr. Wolfe's examination and report were not competent and were not performed by a competent doctor. In support, relator directs our attention to all the evidence which she supplied describing the condition of fibromyalgia. Based on this evidence, relator contends that Dr. Wolfe was not competent because she did not agree that her condition was as disabling as her evidence established. Essentially, relator contends that the opinions of treating physicians should be accorded greater weight than those of nontreating physicians. This court has rejected that argument in McMaster, supra, and in State ex rel.Schwaben v. School Emp. Retirement Sys. (1996),76 Ohio St.3d 280. As such, relator has not established that SERB abused its discretion in relying on the report of Dr. Wolfe.
 {¶ 61} Relator also contends that Drs. Altman and Brogan, likewise, were not competent and did not render competent reports concerning her condition. For the reasons cited above with regard to Dr. Wolfe and her report, this argument is likewise rejected. As the commission does in workers' compensation cases, SERB judges the credibility of a doctor's report and weighs that evidence in reaching its determination. Relator has not established that SERB abused its discretion in relying on those reports and in denying her application for disability retirement.
 {¶ 62} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the School Employees Retirement Board abused its discretion in denying her application for disability retirement and this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE
[1] Subsequent to the filing of relator's mandamus complaint, Civ.R. 53 was amended, effective July 1, 2003. Civ.R. 53(C) was unaffected by the 2003 amendment.
[2] Subsequent to the filing of relator's mandamus complaint, Loc.R. 12 of the Tenth District Court of Appeals was amended effective October 2, 2000.
[3] We make no determination whether the magistrate had jurisdiction to issue her decision of February 14, 2001. See, generally, S.Ct.Prac.R. II(2)(D)(1); Howard v. Catholic SocialServ. of Cuyahoga Cty., Inc. (1994), 70 Ohio St.3d 141, 146-147, reconsideration denied, 70 Ohio St.3d 1457. By journal entry filed August 20, 2004, this court sua sponte issued an entry wherein the magistrate's decision of February 14, 2001, was vacated; the magistrate was instructed to reissue her decision of February 14, 2001; and the parties were provided an opportunity to supplement their previous filings.
[4] Since relator applied for disability benefits in March 1998, R.C. 3309.39 has been amended twice. See Sub.H.B. No. 648, 147 Ohio Laws, Part III, 4871, effective September 16, 1998; Sub.S.B. No. 190, 148 Ohio Laws, Part V, effective July 13, 2000.
[5] Since relator applied for disability retirement benefits in March 1998, Ohio Adm. Code 3309-1-41 has been amended thrice. See 1998-1999 Ohio Monthly Record 821, effective November 9, 1998; 2000-2001 Ohio Monthly Record 1678, effective May 2, 2001; 2002-2003 Ohio Monthly Record 2968, effective July 4, 2003. See, generally, Ohio Adm. Code 3309-1-40 (application and procedures for receiving disability benefits).
[6] See letter of November 24, 1998, from Jerold H. Altman, M.D.; letter of November 23, 1998, from Michael D. Brogan, M.D.; and letter of November 12, 1998, from Claire V. Wolfe, M.D.
[7] In her report of May 7, 1998, Dr. Wolfe also stated that "psychologically, I would be concerned that [relator] and whoever was on the school bus with her might be at significant risk. Psychiatric evaluation by a psychiatrist comfortable with somatoform disorders might be appropriate." Id. However, in a psychiatric report by Jerold H. Altman, M.D., dated June 19, 1998, Dr. Altman found no evidence of "disruptive psychiatric disorder" and stated that "[a]ny consideration for disability should be based on physical considerations."